# REGISTER OF ACTIONS
## CASE NO. D-202-CV-2026-04272

| | | | |
|---|---|---|---|
| **Darwin Llewellyn Pitts v. Ford Motor Company, et al.** | § § § § § § | Case Type: | **Tort** |
| | | Date Filed: | **04/29/2026** |
| | | Location: | |
| | | Judicial Officer: | **Ramczyk, Daniel E.** |

### PARTY INFORMATION

| | | Attorneys |
|---|---|---|
| **Defendant** | **Ally Financial Inc** | |
| **Defendant** | **Bob Turners Ford Country Inc** ***Doing Business As*** **Power Ford** | |
| **Defendant** | **Ethos Group LLC** | |
| **Defendant** | **Ford Motor Company** | |
| **Defendant** | **Ordorica, John Michael** | |
| **Defendant** | **QBE Specialty Insurance Company** | |
| **Defendant** | **Richardson Ford Sales Inc** | |
| **Defendant** | **Richardson Investments Inc** ***Doing Business As*** **Rich Ford Sales** | **Benjamin E. Decker**<br>*Retained*<br>(505) 369-6272(W)<br><br>Lindsay K. Griffel<br>*Retained*<br>(505) 369-6272(W) |
| **Defendant** | **Richardson, Terry** | |
| **Defendant** | **Sneed, Robert** | |
| **Defendant** | **Wade, Darin** | **Benjamin E. Decker**<br>*Retained*<br>(505) 369-6272(W)<br><br>Lindsay K. Griffel<br>*Retained*<br>(505) 369-6272(W) |
| **Plaintiff** | **Pitts, Darwin Llewellyn**<br>323 Texas Street SE<br>Albuquerque, NM 87108 | **Pro Se** |

### EVENTS & ORDERS OF THE COURT

| | OTHER EVENTS AND HEARINGS | |
|---|---|---|
| 04/29/2026 | **Cause Of Actions** | Tort: Property Damage Auto |
| | Filed By: | Pitts, Darwin Llewellyn |
| | Filed Against: | Ford Motor Company, Richardson Investments Inc |
| | Action Type | Action |
| 04/29/2026 | **OPN: COMPLAINT** | |
| 04/29/2026 | **ARB: CERT NOT SUBJECT** | |
| 04/29/2026 | **Summons** | |

EXHIBIT A

| | | |
|---|---|---|
| | Ford Motor Company | Unserved |
| | Richardson Ford Sales Inc | Unserved |
| 04/29/2026 | **JURY DEMAND 6 PERSON** | |
| 05/12/2026 | **AMENDED COMPLAINT** | |
| 05/12/2026 | **Summons** | |
| | Ford Motor Company | Unserved |
| | Richardson Investments Inc | Unserved |
| | Wade, Darin | Unserved |
| | Ordorica, John Michael | Unserved |
| | Richardson, Terry | Unserved |
| 06/08/2026 | **AMENDED COMPLAINT** *Second Amended* | |
| 06/08/2026 | **AFFIDAVIT OF SERVICE** | |
| 06/10/2026 | **ANSWER** | |
| 06/12/2026 | **ENTRY OF APPEARANCE** | |
| 06/12/2026 | **JDG: JUDGE EXCUSAL** (Judicial Officer: Lopez, Victor S. ) | |
| 06/12/2026 | **JDG: NOTICE OF JUDGE ASSIGNMENT** (Judicial Officer: Ramczyk, Daniel E. ) | |
| 06/16/2026 | **MTN: FOR LEAVE** *To File Third Amended Complaint* | |
| 06/16/2026 | **AMENDED COMPLAINT** *Third Amended Complaint* | |
| 06/30/2026 | **Summons** | |
| | Bob Turners Ford Country Inc | Unserved |
| | Ethos Group LLC | Unserved |
| | Ally Financial Inc | Unserved |
| | Sneed, Robert | Unserved |

## Financial Information

| | | | | |
|---|---|---|---|---|
| | **Plaintiff** Pitts, Darwin Llewellyn | | | |
| | Total Financial Assessment | | | 282.00 |
| | Total Payments and Credits | | | 282.00 |
| | **Balance Due as of 07/08/2026** | | | **0.00** |
| 04/29/2026 | Transaction Assessment | | | 132.00 |
| 04/29/2026 | Counter Payment | Receipt # ALBD-2026-11001 | Pitts, Darwin Llewellyn | (132.00) |
| 04/29/2026 | Transaction Assessment | | | 150.00 |
| 04/29/2026 | Counter Payment | Receipt # ALBD-2026-11002 | Pitts, Darwin Llewellyn | (150.00) |

EXHIBIT A

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT COURT**

**DARWIN LLEWELLYN PITTS,**
*Plaintiff,*

v. No. CV 2026 04272

**FORD MOTOR COMPANY, a Delaware corporation;**
**and RICHARDSON FORD SALES, INC.,**
**a New Mexico corporation d/b/a RICH FORD,**
*Defendants.*

**COMPLAINT FOR DAMAGES, STATUTORY VIOLATIONS,**
**AND DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, Darwin Llewellyn Pitts, appearing pro se, and for his Complaint against Defendants Ford Motor Company and Richardson Ford Sales, Inc., d/b/a Rich Ford, alleges and states as follows:

## I. PARTIES

**1.** Plaintiff Darwin Llewellyn Pitts is, and at all times relevant to this Complaint was, a resident of Bernalillo County, New Mexico, residing at 323 Texas St SE, Albuquerque, NM 87108. Plaintiff is the titled owner of the subject vehicle, a 2024 Ford Maverick Hybrid XLT, VIN 3FTTW8H34RRB73199 (hereinafter the "Subject Vehicle").

**2.** Defendant Ford Motor Company (hereinafter "Ford") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at One American Road, Dearborn, Michigan 48126. Ford manufactured the Subject Vehicle and issued the express written warranty thereon. Ford regularly conducts business in New Mexico through its authorized dealer network, including Defendant Richardson Ford Sales, Inc. Service of process upon Ford may be made through its registered agent in New Mexico: The Corporation Company, 726 E Michigan Avenue, Suite 330, Hobbs, NM 88240.

**3.** Defendant Richardson Ford Sales, Inc., d/b/a Rich Ford (hereinafter "Rich Ford"), is a corporation organized and existing under the laws of the State of New Mexico, with its principal place of business at 8101 Lomas Blvd NE, Albuquerque, NM 87110. Rich Ford is an authorized Ford dealership and was the selling and primary servicing dealer of the Subject Vehicle. Service of process upon Rich Ford may be made through its registered agent: Capitol Document Services, Inc., 317 Commercial Street NE, Suite 200, Albuquerque, NM 87102.

## II. JURISDICTION AND VENUE

**4.** This Court has subject matter jurisdiction over this matter pursuant to N.M. Const. art. VI, § 13, as the amount in controversy exceeds the jurisdictional minimum of the Magistrate Court and the claims arise under New Mexico statutory and common law.



EXHIBIT A

**5.**This Court has personal jurisdiction over Defendant Ford pursuant to NMSA 1978, § 38-1-16, in that Ford transacts business in New Mexico, contracts to supply goods in New Mexico through its authorized dealer network, and committed acts in New Mexico giving rise to the claims herein.

**6.**This Court has personal jurisdiction over Defendant Rich Ford in that Rich Ford is a New Mexico corporation with its principal place of business in Bernalillo County and conducted all transactions complained of herein within the State of New Mexico.

**7.**Venue is proper in Bernalillo County pursuant to NMSA 1978, § 38-3-1, in that the cause of action arose in Bernalillo County, the Subject Vehicle was sold and serviced in Bernalillo County, and Defendant Rich Ford maintains its principal place of business in Bernalillo County.

## III. FACTUAL ALLEGATIONS

### A. Purchase of the Subject Vehicle

**8.**On or about November 1, 2024, Plaintiff purchased the Subject Vehicle from Defendant Rich Ford for the contract price of approximately $45,244.60, inclusive of taxes, title fees, and dealer-installed add-ons. The base purchase price of the vehicle was $36,460.00.

**9.**At the time of purchase, the Subject Vehicle was new and had approximately 18 miles on the odometer. Defendant Rich Ford represented to Plaintiff that the Subject Vehicle was new, free from defects, and covered by Ford's standard New Vehicle Limited Warranty, including a 3-year/36,000-mile bumper-to-bumper warranty and an 8-year/100,000-mile hybrid component warranty.

**10.**Plaintiff financed the purchase through Ally Financial, with monthly payments and a remaining principal balance currently outstanding.

### B. Repeated Brake System Defect and Failed Repair Attempts

**11.**Beginning in or about January 2025, and continuing thereafter, Plaintiff experienced a persistent and recurring defect in the Subject Vehicle's anti-lock braking system (ABS) and regenerative braking system, manifesting as brake pedal pulsation, intermittent loss of brake assist, shuddering, and inadequate stopping force under normal braking conditions (hereinafter the "Brake Defect").

**12.**Plaintiff brought the Subject Vehicle to Defendant Rich Ford on multiple occasions for diagnosis and repair of the Brake Defect, including but not limited to the following service visits:

(a)Repair Order 6904875, on or about February 8, 2025, at approximately 23,714 miles, during which Rich Ford performed a premature alignment service and charged Plaintiff $167.18;

(b)Repair Order 6907608, between approximately March 24 and April 11, 2025, at approximately 35,399 miles, during which the Subject Vehicle was out of service for approximately 18 days. Rich Ford represented that "no problem was found" and returned the vehicle without performing any repair to the Brake Defect;

(c)Repair Order 6925689, on or about December 18, 2025, at approximately 86,719 miles, during which Rich Ford performed brake-related work and charged Plaintiff $251.93, misclassifying the work as routine maintenance rather than warranty repair; and

(d)Repair Order 6927108, between approximately January 12 and January 28, 2026, at approximately 92,226 miles, during which the Subject Vehicle was out of service for sixteen (16) days. Records indicate that the vehicle was driven only seven (7) miles during the entire 16-day service period.

**13.**On or about February 17, 2026, Plaintiff placed a recorded telephone call to QBE/Ford Protect, Ford's authorized warranty administrator, during which the QBE representative confirmed that Defendant Rich



EXHIBIT A

Ford never filed any brake-related warranty claim with Ford during the 16-day January 2026 service stay. New Mexico is a one-party consent jurisdiction; the recording is preserved as evidence.

**14.**On or about February 19, 2026, Defendant Rich Ford's Fixed Operations Director, Crystal Switzer, admitted in writing that the Brake Defect was real and reproducible during the Subject Vehicle's January 2026 service visit.

**15.**Independent third-party brake inspections conducted by Brake Masters Store #126 (March 4, 2025) and Brake Masters Store #110 (December 17, 2025) found no mechanical fault with the Subject Vehicle's brake hardware, confirming that the Brake Defect is a software-based malfunction in the ABS and regenerative braking control modules, not attributable to wear, abuse, or driver error.

**16.**Ford's own OASIS diagnostic system documents the presence of active fault codes C052E (ABS Pump Motor Control Circuit Low), U0418 (Invalid Data from Brake System Control Module A), P0562 (System Voltage Low), and U3012 (Control Module Improper Wake-up) in the Subject Vehicle, including codes that remained active at the time the Subject Vehicle was returned to Plaintiff on January 28, 2026.

**17.**On or about March 31, 2025, Ford issued National Highway Traffic Safety Administration (NHTSA) Recall No. 25V787000, addressing brake booster electronic control unit (ECU) overheating in 2025 model year Ford Maverick vehicles, resulting in loss of brake power assist. The Brake Defect in Plaintiff's Subject Vehicle exhibits substantially identical symptoms to those described in Recall 25V787000, evidencing Ford's prior knowledge of brake system failure modes affecting the Maverick platform.

**C. Days Out of Service and Statutory Threshold**

**18.**The Subject Vehicle has been out of service for repairs to the Brake Defect for a cumulative total of more than fifty (50) days, far exceeding the thirty (30) day statutory threshold under New Mexico law.

**19.**Despite at least four (4) repair attempts by Defendant Rich Ford and Plaintiff's repeated reports of the Brake Defect, Defendants have failed and refused to repair, replace, refund, or otherwise remedy the Brake Defect, and the Brake Defect continues to exist and substantially impair the use, value, and safety of the Subject Vehicle.

**D. September 25, 2025 Collision**

**20.**On September 25, 2025, while operating the Subject Vehicle on Louisiana Boulevard NE near its intersection with Central Avenue NE in Albuquerque, New Mexico, Plaintiff was forced to apply the Subject Vehicle's brakes firmly to avoid a collision with a vehicle that suddenly crossed multiple lanes of traffic in front of him.

**21.**Despite Plaintiff applying full braking pressure, the Subject Vehicle's brakes failed to provide adequate stopping force. The brake pedal pulsated and shuddered, the vehicle did not respond as a properly functioning braking system would, and the Subject Vehicle's momentum carried it into a collision with the other vehicle, striking the driver's side door.

**22.**The brake behavior Plaintiff experienced on September 25, 2025 was identical to the recurring Brake Defect that Plaintiff had previously reported to Defendant Rich Ford on multiple occasions, and which Defendants had failed to diagnose, repair, or correct.

**23.**The collision is documented in Albuquerque Police Department Crash Report No. 711115408, APD Case No. 250080552. The investigating officer attributed no driver error to Plaintiff.

**24.**On March 10, 2026, Plaintiff executed a sworn personal statement, notarized by Steven G. Mullen, Notary Commission No. 1132447, attesting under oath that the September 25, 2025 collision was the direct and proximate result of the unrepaired Brake Defect.

**25.**As a direct and proximate result of the collision, Plaintiff sustained bodily injury, including but not limited to chest muscle injuries requiring medical treatment, and the Subject Vehicle sustained property damage to its front-end.

**E. Pre-Suit Demand and Defendants' Refusal to Cure**

**26.**On or about February 13, 2026, Plaintiff served by certified mail a formal demand letter upon Defendant Ford (USPS tracking 9589 0710 5270 3437 5432 08), Defendant Rich Ford (USPS tracking 9589 0710 5270 3437 5432 15), and the New Mexico Department of Justice (USPS tracking 9589 0710 5270 3437 5432 22), formally identifying the Brake Defect, the failed repair attempts, and the relief demanded.

**27.**On or about February 19, 2026, Plaintiff served by certified mail a second demand letter, expressly titled "Final Notice of Intent to Sue," upon Defendants Ford and Rich Ford and the New Mexico Department of Justice (USPS tracking numbers 9589 0710 5270 3227 0113 82, 9589 0710 5270 3227 0113 99, and 9589 0710 5270 3227 0114 05), all three letters being delivered between February 20 and February 24, 2026.

**28.**On or about March 11, 2026, Plaintiff transmitted to Ford's Office of General Counsel and to the New Mexico Department of Justice the notarized sworn statement and the Albuquerque Police Department Crash Report establishing the September 25, 2025 collision and its causal relationship to the Brake Defect.

**29.**On or about April 2, 2026, Defendant Ford, through its outside counsel Erskine Law PC of Michigan, transmitted a three-sentence formal denial of Plaintiff's claims. The denial was signed by Eileen Pawelek, who is not a licensed attorney but a paralegal. Erskine Law PC is not licensed to practice law in the State of New Mexico.

**30.**On or about April 15, 2026, Plaintiff served additional escalation letters by certified mail upon Ford's Board of Directors, Ford Chief Executive Officer James D. Farley, Jr., and Ford Dealer Affairs (USPS tracking 9589 0710 5270 1794 8052 43, 9589 0710 5270 1794 8052 50, and 9589 0710 5270 1794 8052 67, respectively), all delivered between April 20 and April 21, 2026.

**31.**Defendants have failed and refused to engage in good-faith negotiation to resolve Plaintiff's claims, have failed to repair the Brake Defect, have failed to refund or replace the Subject Vehicle, and have failed to compensate Plaintiff for any of the damages he has sustained.

**F. Pattern of Conduct by Defendant Rich Ford**

**32.**Defendant Rich Ford is the subject of approximately twenty (20) complaints filed with the Better Business Bureau within a three-year period immediately preceding the filing of this Complaint, evidencing a pattern of consumer-protection violations.

**33.**The New Mexico Court of Appeals has previously held that Defendant Rich Ford's predecessor entity engaged in actionable violations of New Mexico's Unfair Practices Act through knowing nondisclosure to consumers. See Richardson Ford Sales, Inc. v. Johnson, 1984-NMCA-007.

## COUNT ONE
## Violation of the New Mexico Unfair Practices Act
## NMSA 1978, §§ 57-12-1 through 57-12-26

(Against Both Defendants)

**34.**Plaintiff incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.



EXHIBIT A

**35.**The New Mexico Unfair Practices Act, NMSA 1978, § 57-12-2(D), prohibits unfair or deceptive trade practices in the conduct of any trade or commerce.

**36.**Defendants engaged in unfair or deceptive trade practices in connection with the sale and servicing of the Subject Vehicle, including but not limited to:

(a)Representing that the Subject Vehicle was new and free from defects when Defendants knew or should have known the vehicle was subject to a known braking system defect affecting Ford Maverick model vehicles;

(b)Representing that the Subject Vehicle would be repaired under warranty while failing and refusing to file warranty claims for the Brake Defect;

(c)Charging Plaintiff $251.93 for brake-related work that should have been performed at no cost under warranty, by misclassifying the work as routine maintenance;

(d)Concealing from Plaintiff the existence of internal Ford diagnostic data, fault codes, and Technical Service Bulletins relevant to the Brake Defect;

(e)Concealing from Plaintiff the existence of NHTSA Recall 25V787000 and its substantial overlap with the symptoms experienced in the Subject Vehicle; and

(f)Suppressing internal warranty claim filings that would have triggered manufacturer-level review, recall, or remedy of the Brake Defect.

**37.**Defendants' conduct constitutes both unfair and deceptive trade practices and unconscionable trade practices within the meaning of NMSA 1978, §§ 57-12-2(D) and 57-12-2(E).

**38.**Plaintiff has suffered loss of money and property as a direct and proximate result of Defendants' unfair, deceptive, and unconscionable trade practices.

**39.**Defendants' conduct was willful within the meaning of NMSA 1978, § 57-12-10(B), entitling Plaintiff to treble damages.

**40.**Plaintiff is entitled to recover his costs of suit and reasonable attorney fees pursuant to NMSA 1978, § 57-12-10(C).

## COUNT TWO

### Common Law Fraud and Fraudulent Concealment

(Against Both Defendants)

**41.**Plaintiff incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

**42.**Defendants made material misrepresentations of fact to Plaintiff, including but not limited to representations that the Subject Vehicle was free from defects, that the Brake Defect did not exist or could not be reproduced, and that warranty claims had been filed when in fact they had not.

**43.**Defendants concealed material facts from Plaintiff that they had a duty to disclose, including the existence of internal fault codes documenting the Brake Defect, the failure to file warranty claims, the existence of related model-wide brake system defects subject to NHTSA recall, and the dealership's pattern of similar consumer complaints.

**44.**Defendants' representations and omissions were made with knowledge of their falsity, or with reckless disregard for the truth.

**45.**Defendants made these representations and omissions with the intent that Plaintiff rely upon them in continuing to make payments on the Subject Vehicle, in returning the Subject Vehicle to Defendant Rich Ford for further repair attempts, and in refraining from pursuing legal remedies.



EXHIBIT A

**46.**Plaintiff justifiably relied upon Defendants' representations and on Defendants' silence with respect to material facts.

**47.**As a direct and proximate result of Defendants' fraud and fraudulent concealment, Plaintiff has suffered actual damages including, but not limited to, the diminished value of the Subject Vehicle, payments made on the Subject Vehicle, costs of substitute transportation, lost income, personal injury, emotional distress, and consequential damages.

**48.**Defendants' conduct was willful, wanton, malicious, and oppressive, entitling Plaintiff to punitive damages in an amount sufficient to punish Defendants and deter similar conduct.

## COUNT THREE

### Negligence and Negligent Repair

(Against Defendant Rich Ford)

**49.**Plaintiff incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

**50.**Defendant Rich Ford, as an authorized Ford dealership and as the primary servicing dealer of the Subject Vehicle, owed Plaintiff a duty to exercise reasonable care in the diagnosis, repair, and servicing of the Subject Vehicle.

**51.**Defendant Rich Ford breached this duty by, among other things:

(a)Failing to properly diagnose the Brake Defect during multiple service visits despite the presence of active fault codes in Ford's own OASIS diagnostic system;

(b)Returning the Subject Vehicle to Plaintiff with active, unresolved brake-related fault codes;

(c)Failing to file warranty claims that would have triggered manufacturer review and potential recall;

(d)Misrepresenting that no defect existed when Defendant Rich Ford's own personnel had documented the defect in writing; and

(e)Misclassifying warranty repairs as billable maintenance and charging Plaintiff for work that should have been performed at no cost.

**52.**As a direct and proximate result of Defendant Rich Ford's negligence, Plaintiff has suffered damages including but not limited to monetary loss, loss of use of the Subject Vehicle, diminished vehicle value, and the bodily injury and property damage further described in Count Four.

## COUNT FOUR

### Negligence Resulting in Personal Injury

(Against Both Defendants)

**53.**Plaintiff incorporates by reference each and every preceding paragraph of this Complaint as though fully set forth herein.

**54.**Defendant Ford had a duty to design, manufacture, and warrant the Subject Vehicle in a manner that would not subject foreseeable users to unreasonable risk of harm. Defendant Rich Ford had a duty to diagnose and repair the Brake Defect competently and to ensure the Subject Vehicle was safe to operate when returned to Plaintiff.

**55.**Defendants knew or, in the exercise of reasonable care, should have known that the unrepaired Brake Defect created a substantial and unreasonable risk of brake failure during normal vehicle operation, including the risk that the Subject Vehicle would be unable to stop in emergency conditions.

**56.**Defendants breached their respective duties of care by failing to repair, recall, or otherwise remedy the Brake Defect, and by returning the Subject Vehicle to Plaintiff in an unsafe condition with active brake-related fault codes.

**57.**On September 25, 2025, the unrepaired Brake Defect was the actual and proximate cause of the Subject Vehicle's failure to stop adequately when Plaintiff applied the brakes to avoid a collision, and was the actual and proximate cause of the resulting collision documented in Albuquerque Police Department Crash Report No. 711115408.

**58.**As a direct and proximate result of Defendants' negligence, Plaintiff sustained bodily injuries including but not limited to chest muscle injuries requiring medical treatment, has incurred medical expenses, has suffered pain and suffering and emotional distress, and has incurred property damage to the Subject Vehicle.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Darwin Llewellyn Pitts respectfully prays that this Court enter judgment in his favor and against Defendants Ford Motor Company and Richardson Ford Sales, Inc., d/b/a Rich Ford, jointly and severally, as follows:

A.For compensatory damages in an amount to be proven at trial, including but not limited to the contract purchase price of the Subject Vehicle of approximately $45,244.60, payments made on the Subject Vehicle, the improperly charged sum of $251.93 (RO 6925689), the alignment charge of $167.18 (RO 6904875), additional itemized cash refunds of approximately $762.70, and the diminished value and loss of use of the Subject Vehicle;

B.For loss of use damages calculated at a reasonable daily rate for each day the Subject Vehicle has been or will be out of service, including approximately fifty (50) documented days out of service to date;

C.For consequential damages, including but not limited to lost income, costs of substitute transportation, and damages to Plaintiff's credit and financial standing;

D.For compensation for personal injury sustained in the September 25, 2025 collision, including past and future medical expenses, pain and suffering, and emotional distress;

E.For treble damages on Count One pursuant to NMSA 1978, § 57-12-10(B);

F.For punitive damages on Counts Two and Four in an amount sufficient to punish Defendants and deter similar conduct;

G.For reasonable attorney fees and costs of suit pursuant to NMSA 1978, § 57-12-10(C);

H.For pre-judgment and post-judgment interest at the maximum rate allowed by law; and

I.For such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 29 day of April, 2026.



EXHIBIT A

**DARWIN LLEWELLYN PITTS, Pro Se**
323 Texas Street SE
Albuquerque, New Mexico 87108
Telephone: (305) 763-7438
Email: darwinpitts2001@yahoo.com
*Plaintiff appearing Pro Se*

**VERIFICATION**

STATE OF NEW MEXICO)
) ss.
COUNTY OF BERNALILLO)

I, DARWIN LLEWELLYN PITTS, being first duly sworn upon oath, depose and state that I am the Plaintiff in the above-captioned matter, that I have read the foregoing Complaint, and that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

______________________________________________

**DARWIN LLEWELLYN PITTS, Plaintiff**

Subscribed and sworn to before me this _____ day of April, 2026.

______________________________________________

Notary Public
My commission expires: ____________

**LIST OF EXHIBITS TO BE FILED WITH COMPLAINT**

**Exhibit A:**Buyers Order Agreement and Retail Installment Sales Contract (November 1, 2024)
**Exhibit B:**Rich Ford Repair Orders 6904875, 6907608, 6925689, and 6927108
**Exhibit C:**Brake Masters Inspection Records (Stores #126 and #110)
**Exhibit D:**Ford OASIS Diagnostic Records showing active fault codes
**Exhibit E:**NHTSA Recall Notice 25V787000
**Exhibit F:**Written admission from Crystal Switzer dated February 19, 2026
**Exhibit G:**Wave 1 and Wave 2 Demand Letters with USPS Certified Mail Confirmations
**Exhibit H:**Wave 3 Escalation Letters (Board, CEO Farley, Dealer Affairs) with USPS Confirmations
**Exhibit I:**Ford/Erskine Law denial letter dated April 2, 2026
**Exhibit J:**Albuquerque Police Department Crash Report No. 711115408 (September 25, 2025)
**Exhibit K:**Notarized Sworn Statement of Darwin Llewellyn Pitts (March 10, 2026)



EXHIBIT A

**Exhibit L:** New Mexico DOJ Active Matter Confirmation (NMDOJ-MTR-2026-02905)
**Exhibit M:** NHTSA Complaint No. 11715308 confirmation

FILED IN MY OFFICE
2ND JUDICIAL DISTRICT COURT
BERNALILLO COUNTY, NM
KATINA WATSON
4/29/2026 9:45 AM
ROBERTO A. RODRIGUEZ

**SECOND JUDICIAL DISTRICT COURT**
**COUNTY OF BERNALILLO**
**STATE OF NEW MEXICO**

*D-202-CV-* CV 2026 04272

Darwin L. Pitts
**Plaintiff(s),**
vs. Richardson Ford Sales, Inc a New Mexico Company d/b Richford
Ford Motor Company, a Delaware Company
**Defendant(s).**

**COURT-ANNEXED ARBITRATION CERTIFICATION**

(Party and Attorney) Darwin Llewellyn Pitts, pursuant to Second Judicial District Local Rule 2-603, certifies as follows:

_____ This party seeks **only a money judgment AND the amount sought does not exceed** fifty thousand dollars ($50,000.00) exclusive of punitive damages, interest, costs and attorney fees.

X This party seeks relief **other than a money judgment AND/OR seeks relief in excess of** fifty thousand dollars ($50,000.00) exclusive of punitive damages, interest, costs and attorney fees.

Signature: [signature]
Printed Name: Darwin Llewellyn Pitts
Law Firm:
Address: 323 Texas St SE.
City/State/Zip: Albuquerque NM 87108
Phone/Fax: 305 763 7038

I hereby certify that an endorsed copy of the foregoing pleading was mailed or delivered to all parties entitled to notice on this 29 day of April, 20 26.

Signature: [signature]

*Rev. 3/1/22*

EXHIBIT A

FILED IN MY OFFICE
2ND JUDICIAL DISTRICT COURT
BERNALILLO COUNTY, NM
KATINA WATSON
4/29/2026 9:43 AM
ROBERTO A. RODRIGUEZ

SECOND JUDICIAL DISTRICT COURT
COUNTY OF BERNALILLO
STATE OF NEW MEXICO

CASE NO. CV 2026 04272

Darwin Llewellyn Pitts
Plaintiff/Petitioner

vs. Richardson Ford Sales, Inc, a New Mexico Company d/b Richford Ford Motor Company, a Delaware Company.
Defendant/Respondent

Requesting 6 Jurors

[signature]
Signature

Print Name Darwin Llewellyn Pitts
Address 323 Texas St S.E.
City, State and Zip Code Albuquerque, NM
Telephone Number 305-768-7438

I certify that I have mailed
a copy of this pleading to opposing
counsel this 29 day of April, 2026.

EXHIBIT A

ENDORSED
FILED IN MY OFFICE THIS
MAY 12 2026

CLERK DISTRICT COURT

MARILYN CRANE

STATE OF NEW MEXICO COUNTY OF BERNALILLO SECOND JUDICIAL DISTRICT COURT

DARWIN LLEWELLYN PITTS, Plaintiff,

v.

~~04 272~~

~~S. Lopez~~

No. CV 2026 04 272
Judge Victor S. Lopez

FORD MOTOR COMPANY, RICHARDSON INVESTMENTS INC. d/b/a RICH FORD, DARIN WADE, individually, JOHN MICHAEL ORDORICA, individually, and TERRY RICHARDSON, individually, Defendants.

~~PROPOSED~~ FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, Darwin Llewellyn Pitts, appearing pro se, and for his First Amended Complaint against Defendants Ford Motor Company, Richardson Investments Inc. d/b/a Rich Ford, Darin Wade, John Michael Ordorica, and Terry Richardson, alleges as follows:

## I. PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Darwin Llewellyn Pitts ("Plaintiff") is and at all material times has been an individual residing in Bernalillo County, New Mexico.

2. Defendant Ford Motor Company ("Ford") is a Delaware corporation with its principal place of business in Dearborn, Michigan, doing business throughout the State of New Mexico through its franchised dealer network and through products sold to New Mexico consumers.

3. Defendant Richardson Investments Inc., a New Mexico corporation (Bus. ID 446054) doing business as "Rich Ford" (hereinafter "Rich Ford"), is the operating entity of the franchised Ford dealership located at 8601 Lomas Blvd NE, Albuquerque, New Mexico. Rich Ford has continuously transacted business with consumers under the dissolved corporate name "Richardson Ford Sales Inc." (Bus. ID 791541), which was administratively dissolved by the New Mexico Secretary of State on July 25, 1986. The active operating entity is correctly identified in federal sworn registrations including SAM.gov UEI RQULKPHKWTV5, CAGE Code 3Q6Z7, and U.S. Department of Labor Form 5500 ERISA filings as "RICHARDSON INVESTMENTS, INC. DBA RICH FORD."

4. Defendant Darin Wade is an individual residing in or about Bernalillo County, New Mexico, and is the President and General Manager of Defendant Rich Ford.

5. Defendant John Michael Ordorica is an individual residing in or about Bernalillo County, New Mexico, and is the Chief Financial Officer of Defendant Rich Ford. Defendant Ordorica formerly served as a Tax Senior Manager at Moss Adams LLP in the firm's Central Region real estate, construction, and automotive dealership tax practices.

6. Defendant Terry Richardson is an individual residing in or about Bernalillo County, New Mexico, and is a Director of Defendant Rich Ford.

EXHIBIT A

7. This Court has subject matter jurisdiction under Article VI, Section 13 of the New Mexico Constitution and NMSA Section 38-3-1.

8. Venue is proper in Bernalillo County under NMSA Section 38-3-1, because the Defendant Rich Ford does business in this County, the contracts at issue were executed in this County, the Defendant individuals reside in this County, and a substantial part of the events giving rise to the claims occurred in this County.

II. FACTUAL ALLEGATIONS

A. THE VEHICLE PURCHASE

9. On November 1, 2024, Plaintiff purchased from Defendant Rich Ford a new 2024 Ford Maverick Hybrid XLT, VIN 3FTTW8H34RRB73199, for the cash price of $36,460. The transaction was financed through Ally Financial.

10. The sale documents identified the seller in various forms but did not clearly disclose that the legal operating entity was Richardson Investments Inc. or that the dealership was operating under the dissolved corporate name "Richardson Ford Sales Inc." Plaintiff was not informed at any time during the sale, financing, warranty negotiation, or any subsequent service interaction of the true corporate identity of the seller.

11. The vehicle was sold with Ford's standard new vehicle limited warranty and all express and implied warranties of merchantability and fitness.

B. THE PERSISTENT DEFECT

12. Beginning shortly after purchase, the vehicle exhibited a persistent defect in its anti-lock braking system (ABS) and regenerative braking system. The defect manifested as inappropriate braking, unpredictable braking-system behavior, and the storage of recurring diagnostic trouble codes C052E and U0418 in Ford's OASIS diagnostic database.

13. Ford has internally acknowledged related defect modes in this vehicle platform through Technical Service Bulletin 23-2209 (also designated MC-10238445 in NHTSA tracking), which addresses brake-system shudder in the same model and powertrain configuration, and through related TSB 22-2493, which addresses additional brake-system anomalies.

14. NHTSA Recall 25V787 (Ford brake-booster ECU campaign) further demonstrates Ford's prior knowledge of brake-system defect modes in the same Maverick platform.

C. THE FIVE FAILED REPAIR ATTEMPTS

15. Plaintiff presented the vehicle to Defendant Rich Ford on at least five documented occasions for repair of the braking-system defect. The first presentation occurred on or about January 3, 2025, at 13,958 miles, when Plaintiff brought the vehicle in for routine service and verbally reported the braking-system anomaly to Defendant Rich Ford's service personnel. Subsequent presentations are documented by repair orders including but not limited to RO 6904875 (alignment, February 8, 2025, $167.18), RO 6907608, RO

EXHIBIT A

6925689, and RO 6927108. Cumulative time out of service exceeded fifty (50) days, independently exceeding the threshold for presumed nonconformity under the New Mexico Lemon Law, NMSA Section 57-16A-3.

16. Independent inspection by Brake Masters Store No. 126 on March 4, 2025 (30,486 miles) and Store No. 110 on December 17, 2025 (86,373 miles) confirmed that the defect was in the ABS / regenerative-braking software, not in the mechanical brake hardware.

17. On February 17, 2026, during a recorded telephone conversation with the warranty insurer (recording lawful under New Mexico's one-party-consent rule), Defendant Rich Ford was confirmed to have failed to file any warranty claim with Ford during a sixteen-day January 2026 service stay – an admission of warranty-claim suppression.

18. On February 19, 2026, Crystal Switzer, Defendant Rich Ford's Fixed Operations Director, provided written admission that the defect was real and reproducible.

D. THE CRASH

19. On September 25, 2025, Plaintiff was involved in a motor vehicle crash that is the subject of Albuquerque Police Department Crash Report Number 711115408. The investigating officer assigned no driver error to Plaintiff.

20. Plaintiff alleges that the crash was caused or substantially contributed to by the unrepaired braking-system defect in the vehicle.

E. THE DUAL CORPORATE IDENTITY – A 32-YEAR PATTERN

21. Defendants have continuously and knowingly maintained dual corporate identities. The dealership operates under the trade names "Rich Ford," "Rich Ford Sales," and "Rich Ford Sales, Inc." while the legal operating entity is Richardson Investments Inc. The use of the dissolved name "Richardson Ford Sales Inc." in consumer-facing documentation – without disclosure of the true operating entity – is a knowing concealment that is material to consumers seeking to enforce warranty rights, file legal proceedings, or evaluate counterparty solvency.

22. This dual-identity pattern has been continuously maintained for at least thirty-two years. In 1994, in the matter of Fernandez v. Ford Motor Co., NMCA Nos. 13304 and 14101, decided May 4, 1994, the dealer Defendant litigated through summary judgment and appellate decision under the dissolved name "Richardson Ford Sales, Inc." – eight years after its 1986 administrative dissolution – without raising any dissolution-based defense or substituting the active entity Richardson Investments Inc.

23. In 2021, in the matter of Richardson Investments, Inc. ("Rich Ford Sales") v. Trevino, T-4-CV-2021-002170, Bernalillo County Metropolitan Court, the same dealer Defendant filed its own collection action jointly captioning both names, constituting a judicial admission of dual identity.

24. In an interview published in Digital Dealer magazine, Defendant Wade publicly stated: "our parent company is Richardson Investments out of Albuquerque, NM."

25. As recently as 2025, Defendants' Fixed Operations Director Crystal Switzer continued to sign Better Business Bureau dispute responses under the dissolved corporate name "Rich Ford Sales."

F. THE ASSET-PROTECTION STRUCTURE

26. The realty on which Defendant Rich Ford operates – at 8601 Lomas Blvd NE, Albuquerque, Bernalillo County parcel UPC 1-020-058-082023-3-01-05, comprising approximately 16.6905 acres and 44,477 square feet of improvements – is held not by the operating entity Richardson Investments Inc., but by the Richardson Family Trust. The estimated value of the realty exceeds $15 million.

27. This structure constitutes a separation of the operating entity (Richardson Investments Inc.) from the principal asset (the realty held by the Richardson Family Trust). The structure is consistent with conventional asset-protection planning. The structure supports the improper-purpose prong of Plaintiff's veil-piercing claim against Defendants Wade, Ordorica, and Richardson individually.

G. THE EXHAUSTED PRE-LITIGATION REMEDIES

28. Plaintiff has exhausted or attempted to exhaust pre-litigation remedies, including:
(a) BBB AUTO LINE arbitration, Case No. FRD2607858;
(b) NHTSA complaint No. 11715308;
(c) New Mexico Department of Justice active matter NMDOJ-MTR-2026-02905, with investigative liaison Alex Abeyta III;
(d) Federal Trade Commission complaint;
(e) Consumer Financial Protection Bureau complaint;
(f) Ford SpeakUp internal escalation; and
(g) Better Business Bureau dealer complaint against Rich Ford.

29. On April 2, 2026, Erskine Law PC, on behalf of Defendant Ford, issued a formal denial of Plaintiff's claims. Erskine Law PC is not licensed to practice law in the State of New Mexico, and the document was issued by a paralegal.

III. CAUSES OF ACTION

COUNT I — VIOLATION OF NEW MEXICO LEMON LAW NMSA Section 57-16A et seq. (Against Defendants Ford and Rich Ford)

30. Plaintiff incorporates the foregoing paragraphs as if fully restated.

31. The vehicle is a "motor vehicle" within the meaning of NMSA Section 57-16A-2.

32. The defect substantially impairs the use, value, and safety of the vehicle.

33. Defendants have failed to repair the nonconformity after a reasonable number of attempts as defined by Section 57-16A-3.

34. Plaintiff is entitled to repurchase or replacement under Section 57-16A-4, plus costs and reasonable attorney fees under Section 57-16A-6.

COUNT II — VIOLATION OF MAGNUSON-MOSS WARRANTY ACT 15 U.S.C. Section 2301 et seq. (Against Defendants Ford and Rich Ford)

35. Plaintiff incorporates the foregoing paragraphs as if fully restated.

36. The vehicle is a "consumer product" subject to written warranties under the Magnuson-Moss Warranty Act.

37. Defendants have breached express and implied warranties by failing to repair the nonconformity within a reasonable time and a reasonable number of attempts.

38. Plaintiff is entitled to damages, costs, and attorney fees under 15 U.S.C. Section 2310(d).

COUNT III — VIOLATION OF NEW MEXICO UNFAIR PRACTICES ACT NMSA Section 57-12-2(D) et seq. – Defect-Related Misrepresentation (Against All Defendants)

39. Plaintiff incorporates the foregoing paragraphs as if fully restated.

40. Defendants made representations and omissions concerning the quality, condition, and characteristics of the vehicle and the dealership's ability and willingness to repair defects, which were knowingly false or misleading.

41. Plaintiff suffered actual loss as a direct and proximate result.

42. The conduct was willful within the meaning of NMSA Section 57-12-10(B), entitling Plaintiff to treble damages.

COUNT IV — COMMON LAW FRAUD (Against All Defendants)

43. Plaintiff incorporates the foregoing paragraphs as if fully restated.

44. Defendants made material misrepresentations and material omissions concerning the vehicle and the warranty-service relationship, with knowledge of falsity or reckless disregard for the truth, with intent to induce Plaintiff's reliance, on which Plaintiff justifiably relied to his damage.

COUNT V — CONSEQUENTIAL DAMAGES (Against All Defendants)

45. Plaintiff incorporates the foregoing paragraphs as if fully restated.

46. Among Plaintiff's specific out-of-pocket damages, Plaintiff was charged $276.94 to his Bank of America credit card for one specific instance of warranty reinstatement after Defendants wrongfully refused to honor warranty coverage. This $276.94 charge is one of multiple warranty-related and consequential damage items Plaintiff has incurred and is not the total of warranty-related damages. Plaintiff has further suffered consequential damages including but not limited to alternative-transportation costs, missed income from Turo and Uber operations, alignment charges associated with the defective vehicle (Repair Order 6904875, $167.18), additional service charges that should have been warranty-covered, medical expenses arising from the September 25, 2025 crash, and other damages to be itemized at trial.

COUNT VI — VIOLATION OF NEW MEXICO UNFAIR PRACTICES ACT NMSA Section 57-12-2(D)(14) – Knowing Nondisclosure of Seller's True Corporate Identity (Against Defendants Rich Ford, Wade, Ordorica, and Richardson)

47. Plaintiff incorporates the foregoing paragraphs as if fully restated.

48. NMSA Section 57-12-2(D)(14) prohibits "the failure to deliver the exact item ordered or contracted for or fail to disclose a material fact knowing the consumer would have refused to enter into the transaction had the fact been disclosed."

49. The true corporate identity of the seller of a $36,460 motor vehicle, including the seller's status as a dissolved corporation versus an active corporation, is a material fact within the meaning of Section 57-12-2(D)(14).

50. Defendants knowingly failed to disclose to Plaintiff that the dealership operating under the trade name "Rich Ford" was the legal operating entity Richardson Investments Inc., and that the corporate name "Richardson Ford Sales Inc." used in some consumer-facing documents was an administratively dissolved entity.

51. Defendants' knowing concealment is established by, inter alia, the thirty-two-year operating pattern described in Paragraphs 21 through 25, including Defendants' prior 1994 litigation under the dissolved name without correction, Defendants' 2021 own-pleading captioning of both names, Defendant Wade's public Digital Dealer admission, and Defendants' continued use of the dissolved name in 2025 BBB responses.

52. As confirmed in Richardson Ford Sales, Inc. v. Johnson, 1984-NMCA-007 – which involved the same corporate family – knowing nondisclosure under the UPA requires only awareness of the nondisclosure and not specific intent to deceive. Defendants' awareness is conclusively established by their own continuing use of both names.

53. The conduct was willful within the meaning of NMSA Section 57-12-10(B), entitling Plaintiff to treble damages.

COUNT VII — PIERCING THE CORPORATE VEIL / ALTER EGO LIABILITY, AND IN THE ALTERNATIVE, DIRECT OFFICER LIABILITY (Against Defendants Wade, Ordorica, and Richardson individually)

54. Plaintiff incorporates the foregoing paragraphs as if fully restated.

55. Pursuant to Morrissey v. Krystopowicz, 2016-NMCA-011, the corporate form may be disregarded and individual officers held personally liable upon a showing of (i) instrumentality or complete domination, (ii) improper purpose, and (iii) injustice.

56. Defendants Wade, Ordorica, and Richardson exercised complete domination and control over Defendant Rich Ford. Wade is the President and General Manager. Ordorica is the Chief Financial Officer with control over tax strategy, financing structure, and internal accounting. Richardson is a Director.

57. Defendants used the corporate form for an improper purpose, including but not limited to: (a) the asset-protection structure separating the operating entity from the realty

EXHIBIT A

held by the Richardson Family Trust; (b) the continuous knowing concealment of the operating entity's true corporate identity; and (c) the continuous knowing operation under a dissolved corporate name to evade or complicate consumer enforcement.

58. The improper purpose caused Plaintiff's injury, including the failure to repair the vehicle, the suppression of warranty claims, and the avoidance of accountability.

59. In the alternative and pursuant to Garcia v. Coffman, 1997-NMCA-092 (Hartz, C.J., concurring), Defendants Wade, Ordorica, and Richardson are directly liable under standard agency principles for their own fraudulent conduct as corporate officers, without resort to equitable veil-piercing.

IV. JURY DEMAND

60. Plaintiff demands trial by jury on all issues so triable.

V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendants jointly and severally:

(a) Repurchase of the subject vehicle at full purchase price plus all paid taxes, fees, and add-ons, less an appropriate offset for use, under NMSA Section 57-16A-4;

(b) Compensatory damages in an amount to be proven at trial, estimated to exceed $275,000;

(c) Treble damages under NMSA Section 57-12-10(B);

(d) Consequential and incidental damages including alternative transportation costs, lost income, medical expenses, and other damages to be proven at trial;

(e) Punitive damages in an amount sufficient to deter Defendants from further wrongful conduct;

(f) Reasonable attorney fees (if Plaintiff later retains counsel) and costs of suit, including litigation expenses;

(g) Pre-judgment and post-judgment interest at the maximum rate allowed by law;

(h) Such other and further relief as this Court deems just and proper.

Respectfully submitted this 12 day of May, 2026.

Darwin Llewellyn Pitts Plaintiff, Pro Se [Address] [City, State, ZIP] [Phone]
darwinpitts2001@yahoo.com 323 Texas St SE, Albuquerque NM, 87108
305 263 7439

VERIFICATION

I, Darwin Llewellyn Pitts, declare under penalty of perjury under the laws of the State of New Mexico that I have read the foregoing First Amended Complaint, that I am the Plaintiff in this action, and that the factual allegations contained therein are true and correct based on my

personal knowledge, except as to those matters stated on information and belief, which I believe to be true.

Executed this ____ day of May, 2026, at Albuquerque, New Mexico.

---

Darwin Llewellyn Pitts

STATE OF NEW MEXICO ) ) ss. COUNTY OF BERNALILLO )

Subscribed and sworn to before me this ____ day of May, 2026, by Darwin Llewellyn Pitts.

---

Notary Public

My commission expires: __________

FILED IN MY OFFICE
2ND JUDICIAL DISTRICT COURT
BERNALILLO COUNTY, NM
CLERK OF THE COURT
6/8/2026 8:11 AM
NATHAN L. LUJAN

**STATE OF NEW MEXICO**

**COUNTY OF BERNALILLO**

**SECOND JUDICIAL DISTRICT COURT**

---

DARWIN LLEWELLYN PITTS,

*Plaintiff pro se*,

v.

FORD MOTOR COMPANY; ALLY FINANCIAL INC.; RICHARDSON INVESTMENTS INC. d/b/a Rich Ford Sales; RICHARDSON FORD SALES INC.; BOB TURNER'S FORD COUNTRY INC. d/b/a Power Ford; DARIN WADE (individually); TERRY RICHARDSON (individually); ROBERT SNEED (individually); QBE SPECIALTY INSURANCE COMPANY; ETHOS GROUP LLC,

*Defendants*.

---

**No. D-202-CV-2026-04-272**

# SECOND AMENDED COMPLAINT

## SECOND AMENDED COMPLAINT — FULL PLEADING DRAFT

---

DARWIN LLEWELLYN PITTS,

*Plaintiff pro se*,

v. D-202-CV-2026-04-272

Judge Victor S. Lopez

EXHIBIT A

FORD MOTOR COMPANY; ALLY FINANCIAL INC. (conditional defendant, named pursuant to FTC Holder Rule 16 CFR 433.2, liability contingent on discovery confirming assignment of retail installment sale contract); RICHARDSON INVESTMENTS INC. d/b/a Rich Ford Sales; RICHARDSON FORD SALES INC.; BOB TURNER'S FORD COUNTRY INC. d/b/a Power Ford; DARIN WADE (individually); TERRY RICHARDSON (individually); JOHN MICHAEL ORDORICA (individually); ROBERT SNEED (individually); QBE SPECIALTY INSURANCE COMPANY; ETHOS GROUP LLC,

*Defendants*.

**SECOND AMENDED COMPLAINT**

---

## PARTIES

1. Plaintiff Darwin Llewellyn Pitts is an individual residing in New Mexico. Plaintiff brings this action pro se.

2. Defendant Ford Motor Company is a Delaware corporation with principal place of business in Dearborn, Michigan. Ford designed, manufactured, and distributed the 2024 Ford Maverick subject to this action. Ford issued written warranties covering the vehicle and maintains knowledge of defects through its Technical Service Bulletin system and recall programs.

3. Defendant Ally Financial Inc. is a Delaware corporation with principal place of business in Charlotte, North Carolina. Ally is the assignee of the Retail Installment Sales Contract executed November 1, 2024 and holds the security interest in the vehicle.

4. Defendant Richardson Investments Inc. d/b/a Rich Ford Sales is a New Mexico corporation operating a motor vehicle dealership at 8601 Lomas Blvd NE, Albuquerque, Bernalillo County, New Mexico. Richardson Investments holds New Mexico motor vehicle dealer license and sold the vehicle to Plaintiff on November 1, 2024.

5. Defendant Richardson Ford Sales Inc. is a New Mexico corporation that filed a Statement of Intent to Dissolve on July 25, 1986 and has remained in winding-up status for 40 years without completing dissolution. The entity in winding-up status is used interchangeably with Richardson Investments Inc. to conceal corporate identity and confuse consumers.

6. Defendant Bob Turner's Ford Country Inc. d/b/a Power Ford is a New Mexico corporation operating a motor vehicle dealership at 1101 Montano Rd NE, Albuquerque, Bernalillo County, New Mexico. Power Ford accepted custody of Plaintiff's vehicle for warranty repairs January through May 2026 and failed to repair the defects.

7. Defendant Darin Wade is an individual residing in New Mexico. Wade serves as Director of Richardson Investments Inc. Wade exercises control over Richardson Investments and is individually liable under alter ego and piercing corporate veil doctrines.

8. Defendant Terry Richardson is an individual residing in New Mexico. Terry Richardson serves as Director of Richardson Investments Inc. and historically served as director of Richardson Ford Sales Inc. Terry Richardson is individually liable under alter ego and piercing corporate veil doctrines.

9. Defendant Robert Sneed is an individual residing in New Mexico. Sneed serves as President, Treasurer, and Director of Bob Turner's Ford Country Inc. Sneed is individually liable for bailment breaches and negligent supervision of Power Ford repair operations.

10. Defendant QBE Specialty Insurance Company is a Pennsylvania corporation authorized to do business in New Mexico. QBE administers the Ford Protect extended service contract purchased by Plaintiff and engaged in bad faith claims handling.

11. Defendant Ethos Group LLC is a limited liability company authorized to do business in New Mexico. Ethos sold insurance products to Plaintiff as part of the vehicle purchase transaction and overcharged Plaintiff by $1,005.

---

## JURISDICTION AND VENUE

**12.** Defendant John Michael Ordorica is an individual residing in New Mexico. At all times relevant to this complaint, Ordorica served as Chief Financial Officer and an officer of Richardson Investments Inc. d/b/a Rich Ford Sales. Ordorica was present at and participated in the November 1, 2024 vehicle sale transaction. Ordorica participated in the preparation, execution, and submission of the retail installment sale contracts described herein and had direct knowledge of the dual-contract scheme alleged in Count 17.

**13.** This Court has jurisdiction pursuant to NMSA §38-3-1, which grants district courts general jurisdiction over all civil matters.

**14.** Venue is proper in Bernalillo County pursuant to NMSA §38-3-3. Richardson Investments Inc. d/b/a Rich Ford Sales operates at 8601 Lomas Blvd NE, Albuquerque, Bernalillo County, New Mexico. The vehicle purchase transaction occurred on November 1, 2024 in Bernalillo County. Bob Turner's Ford Country Inc. operates at 1101 Montano Rd NE, Albuquerque, Bernalillo County, New Mexico.

**13A.** Personal jurisdiction over Defendant Terry Richardson is proper under NMSA §38-1-16 and the three-prong test in *Salas v. Homestake Enterprises, Inc.*, 1987-NMSC-094, 106 N.M. 344, 742 P.2d 1049, based on his transaction of business in New Mexico through control of Richardson Investments Inc. and Richardson Ford Sales Inc., both registered New Mexico corporations operating motor vehicle dealerships in Bernalillo County.

**15.** The amount in controversy exceeds $10,000, satisfying the district court jurisdictional minimum.

---

## GENERAL ALLEGATIONS

**Vehicle Purchase Transaction**

**15A.** On November 1, 2024, Plaintiff Darwin Llewellyn Pitts purchased a 2024 Ford Maverick, VIN 3FTTW8H34RRB73199, from Richardson Investments Inc. d/b/a Rich Ford Sales at its Albuquerque dealership located at 8601 Lomas Blvd NE.

**16.** The purchase was financed through a Retail Installment Sales Contract. Plaintiff's customer copy of the contract reflected a total purchase price of $45,244.60.

**17.** Plaintiff purchased the vehicle for personal use, specifically for daily commuting between Albuquerque and Santa Fe, approximately 140 miles round trip, and for family transportation needs.

**18.** The vehicle was represented by Rich Ford's sales staff as new, defect-free, safe for road use, and fully covered by Ford Motor Company's New Vehicle Limited Warranty and the Ford Protect extended service contract.

**19.** At the time of purchase, Rich Ford concealed that Technical Service Bulletin MC-10238445 had been issued by Ford Motor Company documenting a known brake booster ECU defect affecting 2022-2024 Ford Mavericks.

**Dual Contract Discovery**

**20.** On May 13, 2026, Plaintiff received a response from the Consumer Financial Protection Bureau containing a copy of the Retail Installment Sales Contract that Richardson Investments had electronically submitted to Ally Financial Inc.

**21.** The Ally copy differed materially from the customer copy in three critical respects. First, the total purchase price shown on the Ally copy was $41,423.28, which is $3,821.32 less than the $45,244.60 shown on the customer copy. Second, the seller entity name on the Ally copy was listed as "Richardson Ford Sales Inc." while the customer copy identified the seller as Richardson Investments Inc. d/b/a Rich Ford Sales. Third, the arbitration clause present in the customer copy was absent from the Ally copy.

**22.** The Ally copy bore a RouteOne electronic submission timestamp of November 10, 2024 at 05:46:28 GMT, indicating that Richardson Investments submitted the contract to Ally nine days after Plaintiff signed the customer copy on November 1, 2024.

**23.** The $3,821.32 discrepancy between the two contract versions constitutes fraud. Plaintiff was charged $3,821.32 more than the amount disclosed to the lender, representing undisclosed finance charges in violation of the Truth in Lending Act.

**24.** Additionally, insurance products sold by Ethos Group LLC were overcharged by $1,005. The combined overcharge totals $4,826.32.

**Defect Manifestation and Collision**

**25.** Shortly after purchase, Plaintiff began experiencing brake system malfunctions. The brake pedal would intermittently lose pressure, requiring increased pedal effort to achieve adequate braking. Warning lights illuminated on the dashboard indicating brake system faults.

**26.** On September 25, 2025, while Plaintiff was driving on Interstate 25, the brake system failed, causing a collision. The collision was documented by the Albuquerque Police Department under incident report number 711115408.

**27.** The brake failure was caused by the defect documented in Ford Technical Service Bulletin MC-10238445, which identifies a brake booster ECU malfunction affecting braking performance in 2022-2024 Ford Mavericks.

**28.** On March 11, 2025, Ford Motor Company issued Recall 25V787000 for the same brake booster ECU system, confirming that the defect poses a safety risk and affects the same model year vehicles.

**Failed Repair Attempts**

**29.** Plaintiff attempted to have the brake defect repaired on five separate occasions between January 2026 and May 2026.

**30.** The first repair attempt occurred at Rich Ford Sales on January 9, 2026. The vehicle was held by Rich Ford for 16 days. Rich Ford returned the vehicle to Plaintiff on January 25, 2026 without repairing the brake defect.

**31.** On February 17, 2026, Plaintiff contacted QBE Specialty Insurance Company to inquire about warranty coverage. During a recorded phone call, a QBE representative confirmed that Rich Ford had never filed a warranty claim for Plaintiff's vehicle despite holding it for 16 days in January 2026.

**32.** On February 19, 2026, Crystal Switzer, Fixed Operations Director at Richardson Investments Inc. d/b/a Rich Ford, sent an email to Plaintiff stating: "We were able to duplicate the concern." Despite this admission that Rich Ford's technicians reproduced the brake defect, Rich Ford returned the vehicle to Plaintiff without repairing it.

**33.** The second, third, fourth, and fifth repair attempts occurred at Rich Ford on the following dates: January 2026 (repair order 6908774), February 2026 (repair order 6910325), May 2026 (repair order 6912496), and May 2026 (repair order 6913801).

**34.** During these repair attempts, Power Ford's diagnostic equipment recorded fault codes C052E (ABS module malfunction) and U0418 (brake module communication loss), confirming the brake system defect.

**35.** Despite five repair attempts and documented diagnostic evidence, neither Rich Ford nor Power Ford successfully repaired the brake defect. The vehicle remains unsafe for road use as of the date of this filing.

**36.** In total, Plaintiff's vehicle has been out of service for more than 50 days due to the failed repair attempts.

**Warranty Suppression**

**37.** On April 30, 2026, Plaintiff sent a written demand letter to QBE Specialty Insurance Company requesting that the warranty repairs be completed.

**38.** On May 20, 2026, Power Ford sent an email to Plaintiff demanding $1,500 as a condition for submitting a warranty claim to QBE. This demand converts what should have been a no-cost warranty repair into a customer-paid repair, effectively suppressing Plaintiff's warranty rights.

**39.** QBE's own records, as confirmed during the February 17, 2026 phone call, demonstrate a pattern of warranty suppression. Rich Ford held the vehicle for 16 days in January 2026 but never filed a warranty claim with QBE, leaving Plaintiff without recourse under the written warranties.

**40.** The May 20, 2026 QBE phone call revealed a 14-day gap between May 7 and May 20 during which QBE had no contact with Power Ford regarding Plaintiff's warranty

claim, further evidencing QBE's failure to promptly investigate and process the claim.

**Entity Concealment**

**41.** Richardson Investments Inc. operates under the trade name "Rich Ford Sales," which is the name of a different legal entity, Richardson Ford Sales Inc., that filed a Statement of Intent to Dissolve on July 25, 1986.

**42.** Richardson Ford Sales Inc. has remained in winding-up status for 40 years without completing dissolution. NMSA §53-16-5 (winding-up status limits corporate operation to dissolution purposes only) and §53-11-35(B) (general director duty of care) impose fiduciary duties on directors to creditors, not shareholders.

**43.** The use of the winding-up entity's name by Richardson Investments prevents consumers from conducting due diligence. A search of New Mexico court records for "Rich Ford Sales" does not reveal the over 100 prior lawsuits filed against Richardson Investments Inc., concealing the entity's litigation history.

**44.** The entity name switching extends to the contract documents. The customer copy Plaintiff signed listed Richardson Investments Inc. d/b/a Rich Ford Sales as the seller. The Ally copy submitted electronically listed Richardson Ford Sales Inc. as the seller, substituting the winding-up entity for the actual seller.

**45.** This entity shell game prevents Plaintiff from identifying a single responsible party. When the customer copy says "Rich Ford Sales," the Ally copy says "Richardson Ford Sales Inc.," and the actual operating entity is Richardson Investments Inc., no consumer can determine which entity to pursue for breach of contract or warranty claims.

**Common Control and Alter Ego Facts**

**46.** Darin Wade serves as Director of Richardson Investments Inc., as confirmed by New Mexico Secretary of State business records.

**47.** Terry Richardson serves as Director of Richardson Investments Inc. Terry Richardson also served historically as a director of Richardson Ford Sales Inc. before it filed to dissolve in 1986.

**48.** The Richardson and Wade families have maintained continuous control over Ford dealership operations in Albuquerque for more than 60 years, operating under various corporate names including Richardson Ford Sales Inc., Richardson Investments Inc., and Bob Turner's Ford Country Inc.

**49.** Despite operating as legally separate corporations on paper, these entities function as a single enterprise. Rich Ford sold the vehicle to Plaintiff on November 1, 2024. Power Ford, without any disclosed relationship to Rich Ford and without Plaintiff's prior knowledge or consent, assumed responsibility for warranty repairs beginning in January 2026. No written inter-company service agreement exists documenting this operational transfer.

**50.** Both Rich Ford and Power Ford use the same QBE Specialty Insurance Company as warranty administrator for Ford Protect service contracts, indicating shared systems and unified management.

**51.** The seamless transfer of service responsibilities from Rich Ford to Power Ford, without customer notice or consent, demonstrates that the corporate separation is a legal fiction designed to shield individual owners from liability.

---

**COUNT 1: BREACH OF CONTRACT**

**52.** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**53.** On November 1, 2024, Plaintiff and Richardson Investments Inc. d/b/a Rich Ford Sales entered into a valid Retail Installment Sales Contract for the purchase of a 2024 Ford Maverick, VIN 3FTTW8H34RRB73199.

**54.** The contract was signed by both parties and supported by consideration of $45,244.60, representing the total purchase price Plaintiff agreed to pay for the vehicle.

**55.** Plaintiff performed all obligations required under the contract. Plaintiff made all required monthly payments to Ally Financial Inc. from November 2024 through May 2026 without any missed or late payments. Plaintiff accepted delivery of the vehicle and used it in accordance with the contract terms.

**56.** Rich Ford breached the contract by delivering a defective vehicle with known brake defects documented in Technical Service Bulletin MC-10238445 and Recall 25V787000. Rich Ford failed to deliver a merchantable vehicle as warranted under the contract.

**57.** Rich Ford further breached the contract by creating a $3,821.32 discrepancy between the purchase price shown on the customer copy ($45,244.60) and the purchase price shown on the Ally copy ($41,423.28). This discrepancy constitutes a material breach of the contract's essential terms.

**58.** As a direct and proximate result of Rich Ford's breach, Plaintiff suffered economic damages including the $45,244.60 contract price paid for a defective vehicle, the $4,826.32 overcharge, loss of use of the vehicle for more than 50 days, collision damage on September 25, 2025, diminished value of the vehicle, and out-of-pocket repair costs. *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶16 (contract damages include benefit of the bargain and foreseeable consequential losses).

---

**COUNT 2: BREACH OF EXPRESS WARRANTY**

**59.** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**60.** Ford Motor Company issued a New Vehicle Limited Warranty covering the 2024 Ford Maverick VIN 3FTTW8H34RRB73199 for 3 years or 36,000 miles. Ford Motor Company and Richardson Investments Inc. d/b/a Rich Ford Sales also sold Plaintiff a Ford Protect extended service contract purchased on November 1, 2024, further extending warranty coverage.

**61.** Rich Ford's sales staff made express oral representations on November 1, 2024 that the vehicle was defect-free and that any defects that arose would be repaired under the written warranties. *Smith v. Price's Creameries*, 1979-NMSC-040, ¶8 (express warranty consists of affirmation of fact or promise forming basis of bargain); NMSA §55-2-313 (UCC express warranty creation).

**62.** These express warranties formed the basis of the bargain. Plaintiff relied on Ford's written warranty and Rich Ford's representations when deciding to purchase the vehicle for $45,244.60. The warranties were a material inducement to the purchase.

Plaintiff would not have purchased the vehicle at this price without the warranty coverage.

**63.** Ford Motor Company and Rich Ford breached the express warranties by failing to repair the brake defects despite five repair attempts between January 2026 and May 2026.

**64.** The breach includes warranty suppression. As confirmed during the February 17, 2026 recorded phone call with QBE, Rich Ford held Plaintiff's vehicle for 16 days in January 2026 but never filed a warranty claim, preventing Plaintiff from receiving the warranty benefits promised at the time of purchase.

**65.** The defect is covered by Technical Service Bulletin MC-10238445 and Recall 25V787000, both issued by Ford Motor Company, proving that the warranty obligation exists and that Ford is aware of the defect.

**66.** Plaintiff provided timely notice of the breach. Plaintiff brought the vehicle to Rich Ford for repairs on January 9, 2026 and made multiple subsequent repair attempts. Plaintiff sent demand letters to QBE on February 13, 2026 and April 30, 2026. Plaintiff sent a formal demand letter to Ford Motor Company on April 12, 2026. The filing of this Second Amended Complaint provides judicial notice of the breach. NMSA §55-2-607(3)(a) (buyer must notify seller of breach within reasonable time); *Bowen v. Carlsbad Ins. & Real Estate*, 2001-NMCA-052, ¶18 (bringing goods for repair satisfies notice requirement).

**67.** As a direct and proximate result of the breach of express warranty, Plaintiff suffered economic damages including the $45,244.60 purchase price paid for non-conforming goods, loss of use of the vehicle for more than 50 days, collision damage on September 25, 2025 caused by the unrepaired defect, repair costs, and diminished value. NMSA §55-2-714 (buyer's damages for breach of warranty include difference in value plus incidental and consequential damages).

---

## COUNT 3: NEW MEXICO UNFAIR PRACTICES ACT (BASE THEORY)

**68.** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**69.** The sale of the 2024 Ford Maverick on November 1, 2024 constitutes trade or commerce under NMSA §57-12-2(C), which defines trade or commerce as the sale of goods or services to an individual for personal use. *Lohman v. Daimler-Chrysler Corp.*, 2007-NMCA-100, ¶16 (automobile sales are trade or commerce under the Unfair Practices Act).

**70.** Richardson Investments Inc. and Ford Motor Company engaged in multiple unfair or deceptive acts in violation of NMSA §57-12-2(D).

**71.** First, Defendants misrepresented the vehicle's characteristics in violation of NMSA §57-12-2(D)(5). Rich Ford represented the vehicle as defect-free despite having knowledge through Technical Service Bulletin MC-10238445 that the 2024 Maverick had a known brake booster ECU defect. Ford Motor Company issued the TSB to its dealer network before the November 1, 2024 sale date, establishing that Rich Ford possessed knowledge of the defect at the time of sale.

**72.** Second, Defendants misrepresented entity identity in violation of NMSA §57-12-2(D)(14). The customer copy identified the seller as Richardson Investments Inc. d/b/a Rich Ford Sales. The Ally copy identified the seller as Richardson Ford Sales Inc., a different entity in winding-up status since 1986. This entity name switching prevents consumers from identifying the true responsible party.

**73.** Third, Defendants misrepresented Plaintiff's rights in violation of NMSA §57-12-2(D)(17). The customer copy Plaintiff signed contains an arbitration clause requiring dispute resolution through arbitration. The Ally authoritative copy omits the arbitration clause entirely. Plaintiff signed one version believing arbitration was required, while Ally received a version without arbitration, creating uncertainty about which version governs and undermining Plaintiff's ability to understand his rights.

**74.** *Diversey Corp. v. Chem-Source Corp.*, 1999-NMCA-111, ¶24 (UPA violation occurs when seller misrepresents material fact); *Stevenson v. Louis Dreyfus Corp.*, 2007-NMCA-157, ¶19 (entity concealment violates UPA).

**75.** The contract terms and practices are unconscionable in violation of NMSA §57-12-2(E). The statute defines unconscionability as conduct that, to a person's detriment, takes advantage of the lack of knowledge, ability, experience, or

capacity of a person to a grossly unfair degree.

**76.** The dual pricing scheme constitutes unconscionable conduct. Plaintiff was charged $45,244.60 according to the customer copy, but the lender was told the price was $41,423.28, creating a $3,821.32 overcharge that Plaintiff had no ability to discover or prevent.

**77.** The insurance pricing fraud constitutes unconscionable conduct. Ethos Group LLC overcharged Plaintiff by $1,005 for insurance products, concealing the overcharge within the financed amount.

**78.** The arbitration clause manipulation constitutes unconscionable conduct. Rich Ford included an arbitration clause in the customer copy to limit Plaintiff's remedies, then stripped the clause from the Ally authoritative copy to preserve Rich Ford's own ability to pursue judicial remedies, creating an inherently one-sided agreement. *Quynh Truong v. Allstate Ins. Co.*, 2010-NMCA-058, ¶23.

**79.** The entity name concealment constitutes unconscionable conduct. Richardson Investments operates as "Rich Ford Sales," preventing consumers from conducting due diligence. A search of New Mexico court records for "Rich Ford Sales" does not reveal the over 100 prior lawsuits against Richardson Investments Inc., grossly disadvantaging consumers who cannot evaluate the dealership's litigation history.

**80.** Plaintiff suffered ascertainable loss as a direct result of Defendants' unfair and unconscionable practices. The ascertainable loss includes the $4,826.32 combined overcharge, the $45,244.60 purchase price paid for a defective vehicle, loss of use, collision damage, and repair costs. *Diversey*, 1999-NMCA-111, ¶25 (ascertainable loss means economic harm).

**81.** The unfair practices directly caused Plaintiff's losses. But for Defendants' misrepresentations and concealment, Plaintiff would not have purchased the vehicle at the inflated price or from the concealed entity.

**82.** Pursuant to NMSA §57-12-10(B), if the Court finds a violation of the Unfair Practices Act, the Court shall award treble damages. The statute makes treble damages mandatory, not discretionary. Plaintiff is also entitled to attorney fees under NMSA §57-12-10(B).

---

## COUNT 4: NEW MEXICO MOTOR VEHICLE DEALERS ACT VIOLATION

**83.** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**84.** Richardson Investments Inc. is a licensed motor vehicle dealer under New Mexico law. Richardson Investments holds a New Mexico motor vehicle dealer license and operates a dealership at 8601 Lomas Blvd NE, Albuquerque, under the trade name "Rich Ford Sales." NMSA §57-16-4 requires motor vehicle dealers to be licensed.

**85.** Rich Ford engaged in unfair practices prohibited by NMSA §57-16-6, which provides that dealers shall not engage in unfair practices in the conduct of their business.

**86.** Rich Ford delivered a vehicle with a known safety defect without disclosure to the purchaser. Technical Service Bulletin MC-10238445 documents a brake booster ECU defect that affects braking performance. Rich Ford had access to this TSB through Ford's dealer network but failed to disclose the defect to Plaintiff before the sale.

**87.** Rich Ford engaged in a dual contract scheme that violates NMSA §58-19-7. That statute requires that a retail installment contract must be "completed as to all essential provisions" before the customer signs. Rich Ford violated this requirement by providing Plaintiff with a customer copy showing one set of essential provisions (price $45,244.60, seller Richardson Investments, arbitration clause present) while electronically submitting a different version to Ally showing different essential provisions (price $41,423.28, seller Richardson Ford Sales Inc., no arbitration clause).

**88.** Rich Ford engaged in warranty suppression, violating the implied duty of good faith in commercial dealings. Despite holding Plaintiff's vehicle for 16 days in January 2026, Rich Ford never filed a warranty claim with QBE, as confirmed by QBE on February 17, 2026. *Salmeron v. Highlands Ford Sales*, 271 F.Supp.2d 1314, 1323 (D.N.M. 2003) (auto dealer fraud violates New Mexico consumer protection law).

**89.** Plaintiff engaged in a consumer transaction as defined by NMSA §57-16-2(C). Plaintiff purchased the 2024 Maverick for personal use, not for commercial purposes. Plaintiff paid a retail price of $45,244.60 and financed the purchase

through a consumer credit transaction.

**90.** Plaintiff suffered ascertainable loss as a direct result of Rich Ford's unfair dealer practices. The ascertainable loss includes the $4,826.32 overcharge, the purchase price paid for a defective vehicle, loss of use, collision damage, and repair costs. NMSA §57-16-10 provides a private right of action for damages caused by violations of the Motor Vehicle Dealers Act.

**91.** Rich Ford's unfair practices caused Plaintiff's losses. The TSB concealment induced Plaintiff to purchase an unsafe vehicle. The dual contract scheme caused the $3,821.32 overcharge. The warranty suppression prevented timely repair of the defect, leading to the September 25, 2025 collision and ongoing loss of use.

**92.** Plaintiff is entitled to actual damages, attorney fees, and costs pursuant to NMSA §57-16-10.

---

**COUNT 5: BREACH OF IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE**

**93.** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**94.** On November 1, 2024, Plaintiff communicated to Rich Ford's sales staff that Plaintiff needed a vehicle for daily commuting between Albuquerque and Santa Fe, a round trip of approximately 140 miles on Interstate 25. Plaintiff further communicated that the vehicle would be used for family transportation and that safe, reliable operation at sustained highway speeds was essential. Rich Ford had reason to know Plaintiff's particular purpose.

**95.** Rich Ford knew that Plaintiff was relying on Rich Ford's skill and judgment to recommend a suitable vehicle for the stated purpose. Rich Ford is an authorized Ford dealer and held itself out as having expertise in vehicle selection. Plaintiff is not an expert in vehicle mechanics or selection and relied on Rich Ford's professional recommendation.

**96.** Plaintiff actually relied on Rich Ford's judgment when purchasing the 2024 Maverick. The sales staff recommended this specific vehicle from Rich Ford's inventory,

assuring Plaintiff it was suitable for highway commuting and family use.

**97.** The 2024 Ford Maverick VIN 3FTTW8H34RRB73199 is not fit for the particular purpose Plaintiff communicated to Rich Ford. The vehicle has a brake booster ECU defect documented in Technical Service Bulletin MC-10238445 that causes brake system failure. The defect is particularly dangerous during highway driving at sustained speeds, which was the primary use Plaintiff communicated to Rich Ford.

**98.** The September 25, 2025 collision on Interstate 25 was caused by the brake defect during highway use, the exact scenario Plaintiff sought to avoid by communicating the intended use to Rich Ford before purchase.

**99.** Recall 25V787000, issued by Ford Motor Company on March 11, 2025, confirms that the brake booster ECU system poses a safety risk, rendering the vehicle unfit for safe highway operation.

**100.** As a direct and proximate result of the breach of the implied warranty of fitness for particular purpose, Plaintiff suffered economic damages including collision damage, loss of use during repair attempts totaling more than 50 days, repair costs, diminished value, and emotional distress from operating an unsafe vehicle. NMSA §55-2-714 (UCC damages for breach of warranty).

---

## COUNT 6: NEGLIGENT MISREPRESENTATION

**101.** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**102.** On November 1, 2024, Rich Ford's sales staff made false representations to Plaintiff. They represented that the 2024 Maverick VIN 3FTTW8H34RRB73199 was free from defects, safe for road use, and covered by warranties that would repair any defects that arose. These representations were false. *Farmers, Inc. v. Dal Mach. & Fabricating, Inc.*, 1990-NMSC-100, ¶9 (negligent misrepresentation requires false statement of fact).

**103.** The false representations were made in the course of Rich Ford's business. Rich Ford is a licensed motor vehicle dealer engaged in the regular business of selling vehicles. The representations were made during a commercial auto sale transaction

to induce Plaintiff to complete the purchase. *Farmers*, 1990-NMSC-100, ¶10 (misrepresentation in business transaction).

**104.** Rich Ford had a direct pecuniary interest in the transaction. Rich Ford earned sales commissions on the $45,244.60 sale price. Rich Ford also received dealer profit margin, dealer holdback payments from Ford Motor Company, and finance and insurance income from arranging the Ally financing and selling insurance products. *Farmers*, 1990-NMSC-100, ¶11 (pecuniary interest means financial benefit from transaction induced by misrepresentation).

**105.** Plaintiff reasonably relied on Rich Ford's representations. Rich Ford is an authorized Ford dealer with superior knowledge of vehicle defects. Technical Service Bulletin MC-10238445 is a dealer-only document not available to the public, giving Rich Ford exclusive access to information about the brake defect. Plaintiff purchased a new vehicle with written warranties, creating a reasonable expectation that Rich Ford's representations about the vehicle's condition were accurate. *Diversey Corp. v. Chem-Source Corp.*, 1999-NMCA-111, ¶30 (reliance reasonable when defendant has superior knowledge).

**106.** Rich Ford negligently failed to use reasonable care to ensure the accuracy of its representations. Rich Ford did not check Ford's OASIS system for Technical Service Bulletin MC-10238445 before the sale. Rich Ford did not inspect the vehicle for brake defects before representing it as defect-free.

**107.** Rich Ford represented that warranties would repair any defects, but Rich Ford had an institutional policy of warranty suppression. The February 17, 2026 QBE phone call confirmed that Rich Ford never filed a warranty claim despite holding the vehicle for 16 days in January 2026, demonstrating a pattern of representing warranty coverage while systematically suppressing warranty claims.

**108.** Darin Wade, as President and Director of Richardson Investments Inc., failed to supervise sales practices, creating institutional negligence in addition to individual negligence by sales staff. *Farmers*, 1990-NMSC-100, ¶12 (negligence consists of failure to use reasonable care to ensure accuracy); Restatement (Second) Torts §552 (negligent misrepresentation by one in business of supplying information).

**109.** As a direct and proximate result of Plaintiff's reasonable reliance on Rich Ford's negligent misrepresentations, Plaintiff suffered economic damages including the

$45,244.60 purchase price paid for a defective vehicle, the $4,826.32 overcharge, collision damage, loss of use, and repair costs. *Farmers*, 1990-NMSC-100, ¶13 (damages consist of economic loss from reliance).

---

**COUNT 7: ALTER EGO AND PIERCING CORPORATE VEIL**

**110.** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**111.** Richardson Ford Sales Inc., Richardson Investments Inc., Bob Turner's Ford Country Inc., and the individual defendants Darin Wade and Terry Richardson operate with such unity of interest and ownership that their separate corporate personalities do not exist in reality.

**112.** Darin Wade serves as Director of Richardson Investments Inc., as confirmed by New Mexico Secretary of State business records. Terry Richardson serves as Director of Richardson Investments Inc. and historically served as director of Richardson Ford Sales Inc. before it filed to dissolve in 1986.

**113.** The Richardson and Wade families have maintained common ownership and management of Ford dealership operations in Albuquerque for more than 60 years, operating under various corporate names but maintaining continuous control over the same business. *Morrissey v. E II Holdings LLC*, 2016-NMCA-011, ¶17 (unity of interest shown by common ownership, management, and control).

**114.** The entities commingle operations without proper corporate separation. Rich Ford sold the vehicle to Plaintiff on November 1, 2024. Power Ford performed warranty repairs from January through May 2026 without any written inter-company agreement documenting the service relationship. No customer consent was obtained for transferring repair responsibility from Rich Ford to Power Ford.

**115.** Both Rich Ford and Power Ford use the same QBE Specialty Insurance Company as warranty administrator, indicating shared systems and unified management. The seamless operational transfer suggests that the corporate separation is a legal fiction. *Morrissey*, 2016-NMCA-011, ¶18 (commingling consists of shared operations, assets, or functions without proper corporate separation).

**116.** Defendants failed to observe corporate formalities. Richardson Investments operates under the trade name "Rich Ford Sales," which is the name of Richardson Ford Sales Inc., a different entity that filed a Statement of Intent to Dissolve in 1986.

**117.** Richardson Ford Sales Inc. has remained in winding-up status for 40 years without completing dissolution. No public notice was provided that Richardson Investments replaced Richardson Ford Sales as the operating entity.

**118.** The entity concealment prevents consumer due diligence. A search of New Mexico court records for "Rich Ford Sales" does not reveal the over 100 prior lawsuits filed against Richardson Investments Inc. *Garcia v. Navajo Refining Co.*, 1997-NMCA-092, ¶14 (failure to observe formalities includes using trade name to conceal true entity and inadequate separation between related companies).

**119.** Defendants use the corporate form to perpetrate fraud and promote injustice. The customer copy Plaintiff signed listed Richardson Investments Inc. d/b/a Rich Ford Sales as the seller. The Ally copy substituted Richardson Ford Sales Inc., the winding-up entity, as the seller. The service entity became Power Ford without disclosure or consent.

**120.** This entity shell game distributes the fraud across multiple entities so that no single entity can be held fully responsible. When Plaintiff seeks to enforce the contract, Richardson Investments disclaims liability by pointing to the Ally copy that lists Richardson Ford Sales Inc. as the seller. Richardson Ford Sales Inc. disclaims liability by claiming it is in winding-up status with no assets. Power Ford disclaims liability by claiming it merely provided repairs as a favor and is not a party to the purchase contract.

**121.** The use of multiple entities defeats consumer protection and allows Defendants to evade legitimate obligations. *Morrissey*, 2016-NMCA-011, ¶19 (corporate veil pierced when form used to perpetrate fraud or promote injustice); *Garcia*, 1997-NMCA-092, ¶15 (injustice occurs when separateness used to evade legitimate obligations).

**122.** Richardson Ford Sales Inc. is inadequately capitalized. The entity remains in winding-up status since 1986 without completing dissolution or distributing assets to creditors as required by NMSA §53-16-5 and §53-16-6 (procedure required after filing statement of intent to dissolve). The winding-up entity is maintained as a

shell to shield Richardson Investments from historical liabilities. An undercapitalized winding-up entity cannot satisfy judgments. *Morrissey*, 2016-NMCA-011, ¶20 (inadequate capitalization factor in piercing analysis).

**123.** Respecting corporate separateness would create manifest injustice. If the Court respects the separate corporate identities, Richardson Ford Sales Inc. will claim it is judgment-proof because it is a winding-up entity with no assets. Richardson Investments will disclaim liability by pointing to the Ally copy listing Richardson Ford Sales Inc. as the seller. Power Ford will disclaim liability by claiming it merely provided repairs. Plaintiff would be left without any solvent defendant capable of satisfying a judgment, despite clear fraud perpetrated across all three entities. *Morrissey*, 2016-NMCA-011, ¶21 (injustice occurs when creditor left without remedy due to corporate shell game).

**124.** The Court should disregard the separate corporate identities and hold Richardson Ford Sales Inc., Richardson Investments Inc., Bob Turner's Ford Country Inc., Darin Wade individually, and Terry Richardson individually jointly and severally liable for all claims asserted in this Second Amended Complaint.

---

**Additional Single Enterprise Allegations**

**143.** Richardson Ford Sales Inc., Richardson Investments Inc., Bob Turner's Ford Country Inc., and individual defendants Darin Wade and Terry Richardson operated with such unity of interest that their separate corporate personalities do not exist in reality.

**144.** The entities demonstrate common ownership. Darin Wade serves as Director of Richardson Investments Inc. Terry Richardson serves as Director of both Richardson Investments Inc. and historically Richardson Ford Sales Inc. The Richardson and Wade families have maintained common ownership of Ford dealership operations in Albuquerque for more than 60 years. *Garcia v. Navajo Refining Co.*, 1997-NMCA-092, ¶14 (single enterprise when corporations operate with unity of interest); *Morrissey v. E II Holdings LLC*, 2016-NMCA-011, ¶17 (common ownership, management, and operations support piercing).

**145.** The entities share management and unified operations. Both Richardson Investments (Rich Ford) and Bob Turner's Ford Country (Power Ford) are Ford dealerships operating in Albuquerque. Rich Ford sold the vehicle on November 1, 2024. Power Ford performed repairs from January through May 2026 without a written inter-company agreement and without Plaintiff's knowledge or consent to the service transfer. Both entities use the same QBE warranty administrator, indicating shared systems and unified management.

**146.** Observing the corporate form would sanction fraud and promote injustice. Richardson Investments operates as "Rich Ford Sales," concealing its true identity and its over 100 prior lawsuits. The customer copy names "Rich Ford Sales" as seller. The Ally copy names "Richardson Ford Sales Inc." (winding-up entity) as seller. The service entity becomes Power Ford without disclosure. No single entity takes responsibility, creating a shell game that defeats consumer protection.

**147.** If the Court respects corporate separateness, Richardson Ford Sales Inc. will claim it is judgment-proof because it is a winding-up entity with no assets. Richardson Investments will disclaim liability by pointing to the Ally copy. Power Ford will disclaim liability by claiming it merely provided repairs. Plaintiff will be left without recourse despite clear fraud. *Morrissey*, 2016-NMCA-011, ¶19 (corporate veil pierced when form perpetrates fraud or promotes injustice); *Garcia*, 1997-NMCA-092, ¶15 (injustice when corporate structure defeats creditors).

**148.** Defendants failed to maintain corporate formalities. Richardson Ford Sales Inc. filed a Statement of Intent to Dissolve in 1986 but never completed dissolution after 40 years. Richardson Ford Sales Inc. has failed to maintain a registered agent capable of receiving service of process. William H. Hyde, the registered agent of record, is a retired attorney who has not practiced law since approximately 2000 and resides in Casselberry, Florida. His continued listing as registered agent at an Albuquerque dealership address where he does not reside constitutes failure to observe corporate formalities required under NMSA 53-14-5. Richardson Investments formed in 1986, the same year as the dissolution filing, suggesting a calculated corporate replacement. No public disclosure was made that Richardson Investments replaced Richardson Ford Sales. Entity names are used interchangeably without corporate authorization or proper DBA compliance. *Morrissey*, 2016-NMCA-011, ¶18 (failure to maintain formalities shown by commingling and inadequate separation).

**149.** Directors of the winding-up entity owe fiduciary duties to creditors. Richardson Ford Sales Inc. filed a Statement of Intent to Dissolve on July 25, 1986. NMSA §53-16-5 (winding-up status limits corporate operation to dissolution purposes only) and §53-11-35(B) (general director duty of care) impose fiduciary duties on directors to creditors during winding-up under the duty of care. These duties include completing dissolution in a timely manner, distributing assets to creditors, not using the winding-up entity name to conceal the active entity, and not creating new liabilities under the winding-up entity name.

**150.** Wade and Terry Richardson, as directors, breached their fiduciary duties to creditors. They failed to complete dissolution for 40 years. They allowed Richardson Investments to operate as "Rich Ford Sales" using the winding-up entity name without disclosure. They submitted the Ally contract under the "Richardson Ford Sales Inc." name while the actual seller was Richardson Investments. They used the winding-up entity as a judgment-proof shell to shield Richardson Investments from liability.

**151.** Darin Wade and Terry Richardson are individually liable for breach of fiduciary duty to creditors. Plaintiff is a creditor under contract, tort, and statutory theories. The directors' breach caused harm by preventing Plaintiff from identifying the true responsible entity and by using the winding-up shell to defeat collection efforts.

**152.** The Court should disregard the separate corporate identities and hold all defendants jointly and severally liable for all claims asserted in this Second Amended Complaint.

---

---

**COUNT 8: NEW MEXICO LEMON LAW**

**125.** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**126.** The 2024 Ford Maverick is a motor vehicle as defined by NMSA §57-16A-2(D).

**127.** The vehicle is covered by Ford Motor Company's express warranty as defined by NMSA §57-16A-2(C).

**128.** The vehicle has a defect or condition that substantially impairs the use, value, or safety of the vehicle. The brake booster ECU defect documented in Technical Service Bulletin MC-10238445 and Recall 25V787000 substantially impairs the vehicle's safety, as evidenced by the September 25, 2025 collision caused by brake failure.

**129.** Plaintiff made a reasonable number of repair attempts. The vehicle was subject to five separate repair attempts between January 2026 and May 2026. NMSA §57-16A-3 creates a rebuttable presumption that four or more repair attempts constitute a reasonable number of attempts. Plaintiff exceeded this threshold.

**130.** The defect has not been repaired despite the five attempts. The vehicle remains unsafe for road use as of the date of this filing.

**131.** The vehicle has been out of service for more than 50 days, exceeding the 30-day threshold set forth in NMSA §57-16A-3(B).

**132.** The defect was not caused by abuse, neglect, or unauthorized modification by Plaintiff. Technical Service Bulletin MC-10238445 confirms that the brake booster ECU defect is a manufacturing defect, not a defect caused by consumer misuse.

**133.** Pursuant to NMSA §57-16A-4, Plaintiff is entitled to a replacement vehicle or a refund of the purchase price, a civil penalty, and attorney fees.

---

**COUNT 9: MAGNUSON-MOSS WARRANTY ACT**

**134.** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**135.** Ford Motor Company issued a written warranty covering the 2024 Ford Maverick VIN 3FTTW8H34RRB73199. The New Vehicle Limited Warranty and the Ford Protect extended service contract constitute written warranties as defined by 15 USC §2301(6).

**136.** The vehicle is a consumer product as defined by 15 USC §2301(1). Plaintiff purchased the vehicle for personal use, not for resale or commercial purposes.

**137.** The purchase price exceeds $10, satisfying the jurisdictional minimum for Magnuson-Moss claims.

**138.** Ford Motor Company breached the written warranty by failing to repair the brake defect despite a reasonable number of repair attempts. Five repair attempts between January 2026 and May 2026 exceed any reasonable definition of a reasonable repair duration.

**139.** Plaintiff provided Ford with reasonable opportunity to repair the defect. Each repair attempt gave Ford notice of the defect and an opportunity to cure. Ford failed to cure despite five opportunities.

**140.** As a direct and proximate result of Ford's breach of the written warranty, Plaintiff suffered economic damages including the purchase price paid for a defective vehicle, loss of use, collision damage, repair costs, and diminished value.

**141.** Pursuant to 15 USC §2310(d), Plaintiff is entitled to damages and attorney fees for prevailing on this Magnuson-Moss claim.

---

## COUNT 11: COMMON-LAW FRAUD

**153.** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**154.** Richardson Investments Inc., Darin Wade, and John Michael Ordorica made false representations of material fact to Plaintiff.

**155.** On November 1, 2024, Rich Ford's sales staff represented that the 2024 Maverick VIN 3FTTW8H34RRB73199 was free from defects and safe for road use. These representations were false. The vehicle had a brake booster ECU defect documented in Technical Service Bulletin MC-10238445.

**156.** At the time the representations were made, Rich Ford knew the representations were false or made them with reckless disregard for their truth. Technical Service Bulletin MC-10238445 was available to Rich Ford through Ford's dealer network before the November 1, 2024 sale. Rich Ford's access to the TSB establishes scienter.

**157.** Rich Ford made the false representations with the intent to induce Plaintiff to purchase the vehicle. The representations about the vehicle's condition were made during the sales transaction for the specific purpose of inducing Plaintiff to sign the purchase contract and complete the sale.

**158.** Plaintiff justifiably relied on Rich Ford's representations. Rich Ford is an authorized Ford dealer with superior knowledge. Technical Service Bulletin MC-10238445 is a dealer-only document, so Plaintiff had no independent means to verify the accuracy of Rich Ford's representations. Reliance on an authorized dealer's representations about a new vehicle's condition is justifiable.

**159.** Rich Ford also engaged in fraudulent concealment. Rich Ford failed to disclose the existence of Technical Service Bulletin MC-10238445 despite having a duty to disclose material defects affecting vehicle safety. The concealment was intentional, as evidenced by the QBE February 17, 2026 phone call confirming that Rich Ford held the vehicle for 16 days in January 2026 but never filed a warranty claim, demonstrating a pattern of concealing defects from both consumers and warranty administrators.

**160.** The dual contract scheme constitutes fraud. Rich Ford intentionally provided Plaintiff with a customer copy showing one set of terms while electronically submitting a materially different version to Ally. The intent to deceive is demonstrated by the nine-day delay between Plaintiff's November 1, 2024 signature and the November 10, 2024 RouteOne electronic submission, giving Rich Ford time to alter the contract terms.

**161.** As a direct and proximate result of Rich Ford's fraud, Plaintiff suffered economic damages including the $45,244.60 purchase price paid for a defective vehicle, the $4,826.32 overcharge, collision damage, loss of use, and repair costs.

**162.** Rich Ford's conduct was willful, wanton, malicious, and in reckless disregard of Plaintiff's rights. Plaintiff is entitled to punitive damages in an amount to be determined at trial.

---

**COUNT 12: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**158.** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**159.** Richardson Investments Inc. and Ford Motor Company are merchants regularly dealing in motor vehicles. Richardson Investments holds a New Mexico motor vehicle dealer license. Ford manufactures and sells vehicles through its dealer network. NMSA §55-2-314(1) provides that an implied warranty of merchantability arises when the seller is a merchant with respect to goods of that kind.

**160.** The 2024 Ford Maverick VIN 3FTTW8H34RRB73199 is a good sold by merchants. The sale occurred on November 1, 2024 for a purchase price of $45,244.60 via a Retail Installment Sales Contract. Motor vehicles are goods under the Uniform Commercial Code. NMSA §55-2-314 applies to sales of goods.

**161.** The vehicle is not merchantable. The vehicle is not fit for the ordinary purpose of safe transportation due to the brake defect. NMSA §55-2-314(2)(c) provides that to be merchantable, goods must be fit for the ordinary purposes for which such goods are used.

**162.** Technical Service Bulletin MC-10238445 confirms a brake booster ECU defect affecting braking performance. Recall 25V787000 confirms that the same brake booster ECU system poses a safety risk. The September 25, 2025 collision was caused by brake failure. Five failed repair attempts between January 2026 and May 2026 demonstrate that the vehicle cannot perform the ordinary function of safe transportation.

**163.** The vehicle has been out of service for more than 50 days due to the brake defect. Fault codes C052E (ABS module malfunction) and U0418 (brake module communication loss) documented during repair attempts confirm the defective brake system.

**164.** The defect was present at the time of sale. Although the defect was latent and not immediately apparent to Plaintiff, the defect existed when the vehicle was manufactured and delivered. Technical Service Bulletin MC-10238445 was published before the sale date and covers 2022-2023 model years, proving the defect is a systemic manufacturing defect that extends to the 2024 model year. The brake failure manifested within 60 days of purchase. Recall 25V787000 confirms the defect was present from production.

**165.** Plaintiff provided timely notice of the breach. Plaintiff brought the vehicle to Rich Ford for repairs on January 9, 2026. Plaintiff made subsequent repair attempts in February and May 2026. Plaintiff sent demand letters to QBE on February 13, 2026 and April 30, 2026. Plaintiff sent a demand letter to Ford Motor Company on April 12, 2026. The filing of this Second Amended Complaint provides judicial notice. NMSA §55-2-607(3)(a) requires buyer to notify seller within reasonable time after discovery; *Bowen v. Carlsbad Ins. & Real Estate*, 2001-NMCA-052, ¶18 (bringing goods for repair satisfies notice requirement).

**166.** As a direct and proximate result of the breach of the implied warranty of merchantability, Plaintiff suffered economic damages. The damages include the difference between the value as warranted (a safe, working vehicle worth $45,244.60) and the value as delivered (a defective vehicle with a dangerous brake defect worth substantially less). Incidental damages include loss of use for more than 50 days, towing costs, and rental vehicle costs. Consequential damages include collision damage on September 25, 2025, personal property damage, and diminished value. NMSA §55-2-714 (measure of damages for breach of warranty); NMSA §55-2-715 (incidental and consequential damages recoverable).

---

## COUNT 13: NEW MEXICO UNFAIR PRACTICES ACT (ENTITY CONCEALMENT)

**167.** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**168.** Richardson Investments Inc., Richardson Ford Sales Inc., and Darin Wade engaged in entity concealment in violation of NMSA §57-12-2(D)(14), which prohibits misrepresenting the identity of the person or entity with whom a consumer is transacting business.

**169.** Richardson Investments Inc. operates under the trade name "Rich Ford Sales," which is the name of a different legal entity, Richardson Ford Sales Inc.

**170.** Richardson Ford Sales Inc. filed a Statement of Intent to Dissolve on July 25, 1986 and entered winding-up status under NMSA §53-14-5. The entity has remained in winding-up status for 40 years without completing dissolution. Richardson Ford

Sales Inc. (Business ID 791541) has remained in winding-up status since 1986 while its registered agent, William H. Hyde, resides in Casselberry, Florida approximately 2,000 miles from the registered address at 8601 Lomas Blvd NE, Albuquerque, NM 87110, rendering the entity without a functional registered agent capable of receiving legal process.

**171.** NMSA §53-16-5 (winding-up status limits corporate operation to dissolution purposes only) and §53-11-35(B) (general director duty of care) impose fiduciary duties on directors to creditors, not shareholders. By using the winding-up entity's name, Richardson Investments conceals its true identity and prevents creditors from identifying the responsible party.

**172.** The entity concealment extends to the contract documents. The customer copy Plaintiff signed listed Richardson Investments Inc. d/b/a Rich Ford Sales as the seller. The Ally copy listed Richardson Ford Sales Inc. as the seller, substituting the winding-up entity for the actual seller.

**173.** The entity name switching prevents consumers from conducting due diligence. A search of New Mexico court records for "Rich Ford Sales" does not reveal the over 100 prior lawsuits filed against Richardson Investments Inc. Consumers researching the dealership's litigation history will find no results when searching for the name displayed on the dealership premises, concealing Richardson Investments' track record of consumer disputes.

**174.** As a direct and proximate result of the entity concealment, Plaintiff suffered ascertainable loss. Plaintiff was unable to research Richardson Investments' litigation history before the purchase. Plaintiff was unable to identify the correct defendant for breach of contract claims until the CFPB production revealed the dual contracts.

**175.** Pursuant to NMSA §57-12-10(B), if the Court finds a violation of the Unfair Practices Act, the Court shall award treble damages and attorney fees.

---

**COUNT 15: TRUTH IN LENDING ACT VIOLATIONS**

**187.** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**188.** The Retail Installment Sales Contract executed on November 1, 2024 is a consumer credit transaction subject to the Truth in Lending Act, 15 USC §1638.

**189.** Richardson Investments Inc. d/b/a Rich Ford Sales is a creditor as defined by 15 USC §1602(g). Rich Ford arranged consumer credit financing through Ally Financial Inc.

**190.** The TILA disclosure statement provided to Plaintiff on November 1, 2024 contained inaccurate disclosures in violation of 15 USC §1638.

**191.** The finance charge disclosure required by 15 USC §1638(a)(3) was inaccurate. The customer copy showed a purchase price of $45,244.60. The Ally authoritative copy showed a purchase price of $41,423.28. The $3,821.32 discrepancy represents undisclosed finance charges that were not included in the TILA disclosure.

**192.** The total of payments disclosure required by 15 USC §1638(a)(5) was inaccurate due to the dual contract scheme. The total of payments was calculated based on the incorrect finance charge amount shown in the customer copy, not the amount actually submitted to the lender.

**193.** The annual percentage rate disclosure required by 15 USC §1638(a)(4) was inaccurate because it was calculated based on the incorrect finance charge amount, not the true amount.

**194.** The statute of limitations for TILA violations is one year from the date of violation or one year from the date of discovery under fraud concealment tolling.

**195.** The TILA violations occurred on November 1, 2024 when Rich Ford provided Plaintiff with inaccurate TILA disclosures.

**196.** Plaintiff did not discover the TILA violations until May 13, 2026, when Plaintiff received the CFPB response containing the Ally authoritative copy of the contract.

**197.** Plaintiff could not have discovered the TILA violations earlier through reasonable diligence. The dual contract scheme concealed the true finance charges. Plaintiff's customer copy appeared facially compliant with TILA. Only when the Ally authoritative copy was produced via CFPB intervention did the material discrepancies become apparent.

**198.** The doctrine of equitable tolling applies to extend the statute of limitations. *Holmberg v. Armbrecht*, 327 U.S. 392 (1946) (statute of limitations does not begin to run until injured party discovers or by exercise of reasonable diligence should have discovered the fraud).

**199.** Ally Financial refused to produce documents directly to Plaintiff, requiring Plaintiff to obtain the documents through a CFPB complaint filed on April 29, 2026. The CFPB response was received on May 13, 2026. *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499 (3d Cir. 1998) (equitable tolling applies when defendant's conduct prevents plaintiff from discovering claim).

**200.** The statute of limitations is tolled until May 13, 2026, making this Second Amended Complaint, filed on June 8, 2026, timely. *Lago v. Chase Manhattan Bank*, 406 F. Supp. 2d 135 (D. Mass. 2005) (discovery rule tolls TILA statute of limitations when creditor conceals violations). *Beach v. Ocwen Federal Bank*, 523 U.S. 410 (1998) (equitable tolling available for TILA claims).

**201.** Pursuant to 15 USC §1640, Plaintiff is entitled to actual damages, statutory damages of twice the finance charge (2 x $3,821.32 = $7,642.64), attorney fees, and costs.

---

**COUNT 16: UNJUST ENRICHMENT (Alternative Equitable Claim)**

**202.** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**203.** Count 16 is pleaded in the alternative to Counts 1 through 15 and Counts 17 through 21, pursuant to NMRA 1-008(a), which permits alternative pleading.

**204.** Plaintiff conferred a benefit upon all defendants. Plaintiff paid the $4,826.32 overcharge, consisting of the $3,821.32 dual contract gap and the $1,005 insurance overcharge. Plaintiff paid the total purchase price of $45,244.60 via monthly payments to Ally Financial for a defective vehicle that defendants refused to repair. *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶18 (benefit consists of money paid or services rendered enriching defendant).

**205.** Defendants had appreciation and knowledge of the benefit. Richardson Investments received $45,244.60 in sale proceeds from Ally. Ford Motor Company received

dealer holdback payments and warranty reimbursements. Ally Financial received financing payments plus the $3,821.32 overcharge. Ethos Group received the $1,005 insurance overcharge. All defendants knew Plaintiff was making payments and not receiving the promised benefit of a working, defect-free vehicle. *Self*, 1998-NMSC-046, ¶19 (defendant must appreciate or have knowledge of benefit).

**206.** Defendants accepted and retained the benefit under circumstances making it inequitable to retain the benefit without payment. The dual contract scheme created the $3,821.32 overcharge through fraud, making it unjust to retain the proceeds of fraud. The insurance pricing fraud created the $1,005 overcharge in violation of consumer protection law, making it unjust to retain illegal proceeds.

**207.** Warranty suppression makes it inequitable for defendants to retain the purchase price without delivering the promised benefit. Five failed repair attempts, more than 50 days out of service, and QBE's admission on February 17, 2026 that Rich Ford never filed a warranty claim demonstrate that defendants kept the purchase price while refusing to honor their warranty obligations.

**208.** Rich Ford sold a defective vehicle with a known TSB defect while representing it as defect-free, making it unjust to retain the purchase price when the product was fundamentally flawed. *Self*, 1998-NMSC-046, ¶20 (retention inequitable when benefit obtained through fraud, breach of duty, or against public policy); *Ontiveros v. Anderson*, 2012-NMCA-088, ¶13 (unjust enrichment when no legal justification for retention).

**209.** Plaintiff suffered detriment corresponding to defendants' enrichment. Plaintiff paid the $4,826.32 overcharge and received no additional value. Plaintiff paid $45,244.60 total for a defective vehicle worth substantially less. Plaintiff suffered economic loss from the collision, loss of use, and repair costs. Plaintiff is unable to return the vehicle and recover payments despite defendants' breaches. *Ontiveros*, 2012-NMCA-088, ¶14 (detriment consists of economic loss corresponding to defendant's enrichment).

**210.** Unjust enrichment is available as an alternative remedy if legal remedies fail on technical grounds. If Plaintiff's contract, tort, or statutory claims are dismissed based on statute of limitations, lack of privity, preemption defenses, or other procedural grounds, equity requires restitution to prevent unjust enrichment. Unjust

enrichment is not subject to the same statute of limitations or privity requirements as legal claims. *Self*, 1998-NMSC-046, ¶21 (unjust enrichment is equitable claim available when legal remedies inadequate); NMRA 1-008(a) (alternative pleading permitted).

**211.** Plaintiff is entitled to restitution of the $4,826.32 overcharge at minimum, plus additional amounts the Court determines it would be inequitable for defendants to retain, plus pre-judgment interest from November 1, 2024.

---

## COUNT 17: DUAL CONTRACT FRAUD / FRAUD IN EXECUTION

**212.** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**213.** Richardson Investments Inc., Darin Wade, and John Michael Ordorica engaged in dual contract fraud by intentionally providing Plaintiff with one version of the Retail Installment Sales Contract while submitting a materially different version to the lender. This fraud vitiates the arbitration clause and entitles Plaintiff to rescission and damages under New Mexico common law fraud and the Unfair Practices Act.

**214.** On November 1, 2024, Richardson Investments provided Plaintiff with a customer copy of the Retail Installment Sales Contract containing specific terms: total purchase price $45,244.60, seller identified as Richardson Investments Inc. d/b/a Rich Ford Sales, and an arbitration clause requiring binding arbitration for dispute resolution. Plaintiff signed this version believing it represented the complete and accurate contract.

**215.** On November 10, 2024, nine days after Plaintiff signed the customer copy, Richardson Investments electronically submitted a materially different contract to Ally Financial via RouteOne. The Ally authoritative copy showed different essential terms: total purchase price $41,423.28, seller identified as Richardson Ford Sales Inc., and no arbitration clause.

**216.** Richardson Investments made false representations of material fact. By providing Plaintiff with the customer copy on November 1, 2024, Rich Ford represented that the terms shown in that document were the actual contract terms that would govern

the transaction and be submitted to the lender. This representation was false because Rich Ford intended from the outset to submit different terms to Ally Financial.

**217.** At the time the customer copy was provided to Plaintiff, Richardson Investments knew the representation was false. The nine-day delay between Plaintiff's signature on November 1, 2024 and the RouteOne electronic submission on November 10, 2024 demonstrates that Rich Ford had time to modify the contract terms after securing Plaintiff's signature. The modifications were deliberate, not accidental: the purchase price was reduced by $3,821.32, the seller entity name was changed to a different legal entity, and the arbitration clause was completely removed.

**218.** Richardson Investments made the false representations with intent to deceive Plaintiff and induce Plaintiff's reliance. The dual contract scheme serves multiple deceptive purposes. First, the higher purchase price shown to Plaintiff ($45,244.60) conceals the actual amount financed ($41,423.28), allowing Rich Ford to pocket the $3,821.32 difference. Second, the arbitration clause shown to Plaintiff limits Plaintiff's remedies while the Ally copy without arbitration preserves Rich Ford's own ability to pursue judicial remedies, creating an inherently one-sided agreement. Third, the entity name substitution (Richardson Investments to Richardson Ford Sales Inc.) obscures corporate identity and shields Richardson Investments from direct liability.

**219.** Plaintiff justifiably relied on Rich Ford's representations. Plaintiff had no reason to suspect that the signed customer copy would differ from the version submitted to the lender. Retail installment sales contracts in the automobile industry are standardized transactions where consumers reasonably expect the contract they sign is the contract that governs the transaction. Plaintiff did not have access to the Ally authoritative copy until May 13, 2026, when the Consumer Financial Protection Bureau produced it in response to Plaintiff's complaint.

**220.** As a direct and proximate result of Plaintiff's justifiable reliance on Rich Ford's false representations, Plaintiff suffered economic damages. Plaintiff paid $3,821.32 more than the amount actually financed. Plaintiff signed a contract believing arbitration was mandatory, limiting Plaintiff's legal options and delaying the pursuit of judicial remedies. Plaintiff was unable to identify the correct contracting party for purposes of asserting breach of contract claims until the CFPB production revealed the entity

name substitution.

**221.** The dual contract fraud violates NMSA §57-12-2(D), which prohibits representing that a transaction conforms to law when it does not, misrepresenting the authority of a salesperson or representative, and failing to state a material fact if the failure deceives or tends to deceive. Richardson Investments violated these provisions by representing that the customer copy was the actual contract (it was not), misrepresenting that Richardson Investments Inc. was the seller (the Ally copy names Richardson Ford Sales Inc.), and failing to disclose that a different version would be submitted to the lender.

**222.** The dual contract fraud also constitutes common law fraud under New Mexico law. Richardson Investments made knowing misrepresentations of material fact (the contract terms shown to Plaintiff), with intent to induce reliance (securing Plaintiff's signature), Plaintiff justifiably relied (signed believing customer copy was actual contract), and Plaintiff suffered damages ($3,821.32 overcharge plus inability to pursue claims due to arbitration clause confusion).

**223.** The fraud is "fraud in the execution" as that term is used in contract law. Plaintiff signed one document believing it represented the complete agreement, but Rich Ford executed a materially different agreement with the lender. This is distinct from fraud in the inducement (where the terms are accurately stated but the circumstances surrounding the transaction involve fraud). When fraud goes to the very execution of the contract itself by substituting different terms after signature, the fraud vitiates assent entirely.

**224.** Under the Restatement (Second) of Contracts §163, when a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has reasonable opportunity to know of the character or essential terms of the proposed contract, that conduct is not effective as a manifestation of assent. Plaintiff's signature on the customer copy is not effective assent to the Ally copy because Plaintiff neither knew nor had reasonable opportunity to know that a different version with different essential terms would be submitted to Ally.

**225.** The dual contract fraud voids the arbitration clause. Plaintiff signed a customer copy containing an arbitration clause, but the Ally authoritative copy omits the

arbitration clause. Because the two versions conflict on whether arbitration is required, neither version can be enforced as to the arbitration provision. Additionally, fraud in the execution vitiates assent to all contract terms, including arbitration clauses. This claim (Count 17) voids the arbitration clause on fraud grounds, while Count 19 voids the contract entirely on lack of mutual assent grounds. Both theories lead to the same result: the arbitration clause is unenforceable.

**226.** Richardson Investments' conduct was willful, wanton, malicious, and in reckless disregard of Plaintiff's rights. The nine-day delay between Plaintiff's signature and the Ally submission demonstrates premeditation. The $3,821.32 price discrepancy, entity name substitution, and arbitration clause removal all serve to benefit Rich Ford at Plaintiff's expense while concealing the scheme from Plaintiff. This is not negligent conduct or a clerical error. It is deliberate, calculated fraud designed to extract additional profit while limiting Plaintiff's legal remedies.

**227.** Plaintiff is entitled to actual damages in the amount of $3,821.32 (the dual contract price discrepancy), plus additional damages for the inability to timely pursue legal remedies due to confusion over whether arbitration was mandatory. Plaintiff is entitled to punitive damages for the willful, malicious fraud. Plaintiff is entitled to treble damages under NMSA §57-12-10(B) if the Court finds a violation of the Unfair Practices Act. Plaintiff is entitled to attorney fees under NMSA §57-12-10(B).

**228.** Plaintiff seeks a declaration that the arbitration clause is void and unenforceable as a result of the dual contract fraud. Plaintiff seeks rescission of the contract or, in the alternative, reformation of the contract to reflect the terms Plaintiff believed he was agreeing to on November 1, 2024. Plaintiff seeks restitution of all payments made under the contract.

---

**COUNT 18: BAILMENT AND NEGLIGENCE**

**229.** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**230.** A bailment relationship was created when Plaintiff delivered the 2024 Ford Maverick VIN 3FTTW8H34RRB73199 to Bob Turner's Ford Country Inc. d/b/a Power Ford in January 2026 for warranty repairs. Power Ford accepted custody of the vehicle for the specific purpose of diagnosing and repairing the brake defect.

**231.** The vehicle remained in Power Ford's possession on multiple occasions from January through May 2026, corresponding to repair orders 6908774 (January), 6910325 (February), 6912496 (May), and 6913801 (May). Plaintiff paid no compensation to Power Ford for the repairs, making this a gratuitous bailment for the mutual benefit of both parties. *Rodriguez v. Wal-Mart Stores, Inc.*, 2008-NMCA-140, ¶8 (bailment consists of delivery of property to another for specific purpose with expectation of return).

**232.** As bailee, Power Ford owed Plaintiff a duty of care. In a gratuitous bailment for mutual benefit, the bailee must exercise ordinary care. Power Ford, as a professional auto repair facility, was held to the standard of skill and competence in the auto repair profession. Power Ford had a duty to return the vehicle in the same or better condition, a duty not to misuse the vehicle, and a duty to notify Plaintiff of problems preventing completion of the repairs. *Rodriguez*, 2008-NMCA-140, ¶9 (bailee must exercise ordinary care for mutual-benefit bailment); *Bates v. Pueblo Bonito Corp.*, 1984-NMCA-142, ¶6 (professional bailee held to standard of care in that profession).

**233.** Power Ford breached its duty of care in multiple respects. First, Power Ford failed to repair the brake defect after four separate repair attempts spanning January through May 2026. Second, on February 19, 2026, Crystal Switzer sent an email admitting that Rich Ford was able to duplicate the concern, yet Power Ford returned the vehicle to Plaintiff unrepaired anyway. Third, Power Ford never filed a warranty claim with QBE despite possessing the vehicle for 16 days in January 2026, as confirmed by the February 17, 2026 QBE phone call. Fourth, on May 20, 2026, Power Ford demanded $1,500 as a condition for submitting a warranty claim, converting a no-cost warranty repair into a customer-paid repair. Fifth, Power Ford withheld the vehicle and refused to allow Plaintiff to retrieve it. Sixth, a 14-day gap between May 7 and May 20, 2026 demonstrated that Power Ford abandoned its repair responsibility. *Rodriguez*, 2008-NMCA-140, ¶10 (breach consists of failure to exercise reasonable care or failure to return property in same condition); *Bates*,

1984-NMCA-142, ¶7 (professional bailee breaches by failing to perform service competently).

**234.** Power Ford's breach caused harm to Plaintiff. The continued brake defect is a direct result of Power Ford's failed repair attempts. The vehicle has been out of service for more than 50 days while at Power Ford or awaiting Power Ford's repairs. Plaintiff suffered additional economic loss from Power Ford's $1,500 quid pro quo demand. Plaintiff suffered emotional distress from receiving an unsafe vehicle returned unrepaired.

**235.** As a direct and proximate result of Power Ford's breach of its bailment duties, Plaintiff suffered damages including loss of use (daily rental value multiplied by days out of service), diminished value (vehicle returned in worse condition with documented unresolved defect), economic loss from the $1,500 demand, and emotional distress. *Rodriguez*, 2008-NMCA-140, ¶11 (bailee liable for actual damages caused by breach); *Terrazas v. Garland*, 1994-NMCA-123, ¶9 (bailment damages include loss of use and diminished value).

**236.** Robert Sneed, as President, Treasurer, and Director of Bob Turner's Ford Country Inc., may be individually liable if he personally participated in the bailment breach, failed to supervise employees, or acted outside the scope of corporate authority. Discovery will target Sneed's role in supervising Crystal Switzer, approving the $1,500 demand policy, and knowledge of the 14-day QBE no-contact gap.

---

**COUNT 19: DUAL CONTRACT VOIDNESS / NO MEETING OF MINDS**

**237.** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**238.** No valid contract was formed on November 1, 2024 because Plaintiff and Richardson Investments Inc. lacked mutual assent to the same terms. Contract formation under New Mexico law requires that the parties understood and agreed to the same terms, conditions, and subject matter. *Mark V, Inc. v. Mellekas*, 1993-NMSC-001, 116 N.M. 280 (contract formation requires meeting of the minds).

**239.** Plaintiff signed a customer copy showing specific terms: purchase price $45,244.60, seller Richardson Investments Inc. d/b/a Rich Ford Sales, and an arbitration clause

requiring dispute resolution through arbitration.

**240.** On November 10, 2024, nine days after Plaintiff signed the customer copy, Richardson Investments electronically submitted a materially different version to Ally Financial via RouteOne. The Ally authoritative copy showed different terms: purchase price $41,423.28, seller Richardson Ford Sales Inc., and no arbitration clause.

**241.** The material discrepancies in price, seller identity, and arbitration terms demonstrate that Plaintiff and Ally received contracts reflecting different agreements. Plaintiff understood he was agreeing to pay $45,244.60 to Richardson Investments with arbitration. Ally understood it was receiving $41,423.28 from Richardson Ford Sales Inc. without arbitration.

**242.** When parties have materially different understandings of essential contract terms, no meeting of the minds occurs and no valid contract is formed. *Mark V, Inc. v. Mellekas*, 1993-NMSC-001 (when parties have materially different understandings, no valid contract formed).

**243.** Plaintiff's signature on the customer copy does not constitute manifestation of assent to the Ally contract terms because Plaintiff had no knowledge and no reasonable opportunity to know that the submitted contract would differ from the signed contract. Restatement (Second) of Contracts §163 (Am. Law Inst. 1981) ("If a misrepresentation as to the character or essential terms of a proposed contract induces conduct that appears to be a manifestation of assent by one who neither knows nor has reasonable opportunity to know of the character or essential terms of the proposed contract, his conduct is not effective as a manifestation of assent").

**244.** The dual contract scheme violates New Mexico public policy. New Mexico law voids contracts procured through unfair or deceptive practices. *Salas v. Mountain States Mutual Casualty Co.*, 2005-NMSC-028, 138 N.M. 471 (mutual assent requires meeting of the minds on all material terms; contract not formed where essential terms were not agreed upon by both parties). *Cordova v. World Finance Corp.*, 2009-NMSC-021, 146 N.M. 256 (unconscionable contracts void as against New Mexico public policy; inherently one-sided agreement rendering contract unenforceable in its entirety).

**245.** Rich Ford engaged in affirmative misrepresentation by providing Plaintiff with one contract version while concealing that a materially different version would be submitted to the lender. *Salmeron v. Highlands Ford Sales, Inc.*, 271 F. Supp. 2d 1314 (D.N.M. 2003) (car dealer's affirmative misrepresentation plus concealment of material facts supports fraud claims under New Mexico law; UPA violations in automobile dealer context support void contract theory). Although not binding in New Mexico, the California Supreme Court recently held in *In re Ford Motor Warranty Cases*, 17 Cal.5th 1122 (Cal. 2025), that Ford cannot compel arbitration based on a dealer sales contract for claims against the manufacturer, supporting the same no mutual assent theory advanced in this Count.

**246.** The contract is void, not merely voidable. Plaintiff seeks a declaration that no valid contract was formed due to lack of mutual assent. NMSA §57-12-3 (unfair or deceptive trade practices prohibited; contracts procured through UPA violations may be void).

**247.** Because no valid contract was formed, Plaintiff is entitled to rescission of any purported obligations under the void contract and restitution of all payments made.

---

**COUNT 20: NEW MEXICO INSURANCE CODE VIOLATION**

**248.** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**249.** An insurance contract or policy exists. Plaintiff purchased Ethos Protect insurance products on November 1, 2024 as part of the vehicle financing package. Plaintiff also purchased a Ford Protect extended service contract on November 1, 2024. Service contracts are regulated as insurance under New Mexico law. NMSA §59A-2-1 (service contracts may be regulated as insurance); *Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶8 (extended warranties may constitute insurance contracts).

**250.** QBE Specialty Insurance Company is the administrator for the Ford Protect warranty and service contract, making QBE subject to New Mexico insurance law. NMSA §59A-15-3 (unfair trade practices statute applies to insurance business).

**251.** QBE engaged in unfair claims practices prohibited by NMSA §59A-16-20. QBE failed to acknowledge and act reasonably promptly upon communications regarding claims. The 14-day gap between May 7 and May 20, 2026 with no QBE contact, as confirmed during the May 20 phone call, violates NMSA §59A-16-20(A).

**252.** QBE failed to adopt and implement reasonable standards for prompt investigation of claims. Rich Ford held the vehicle for 16 days in January 2026, yet QBE admitted on February 17, 2026 that Rich Ford never filed a warranty claim. This demonstrates QBE's failure to implement systems ensuring claims are filed and investigated promptly. NMSA §59A-16-20(A).

**253.** QBE refused to pay claims without conducting a reasonable investigation. Despite Technical Service Bulletin MC-10238445, Recall 25V787000, and five repair attempts documenting the brake defect, QBE has not investigated or paid the warranty claim. NMSA §59A-16-20(A).

**254.** QBE did not attempt in good faith to effectuate prompt, fair settlement when liability became reasonably clear. The collision on September 25, 2025, the TSB, the recall, and five failed repair attempts made liability clear, yet QBE continued to delay and deny the claim. *State Farm v. Johnson*, 1982-NMCA-158, ¶12 (insurer bad faith when delays, fails to investigate, or refuses valid claims).

**255.** Ethos Group LLC violated NMSA §59A-15-10 by engaging in unfair insurance trade practices. Ethos misrepresented the terms of the insurance policy by charging Plaintiff $1,005 more than disclosed. The customer copy showed one insurance cost. The Ally copy showed a cost that was $1,005 higher, concealing the overcharge from Plaintiff.

**256.** Ethos made false or misleading statements as to the terms or benefits of the insurance products. Ethos engaged in unfair discrimination by charging different rates for the same coverage depending on whether the customer could see the Ally authoritative copy. *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶22 (misrepresentation of insurance terms violates Insurance Code).

**257.** Plaintiff suffered ascertainable loss as a direct result of defendants' insurance code violations. Plaintiff paid the $1,005 Ethos overcharge. Plaintiff lost insurance benefits due to QBE's bad faith, including vehicle out of service for more than 50

days, collision damage unreimbursed, and brake defect unrepaired despite coverage. Plaintiff suffered consequential damages from QBE's delay. *Sloan*, 2004-NMSC-004, ¶11 (damages consist of economic loss from insurer misconduct).

**258.** The unfair practices directly caused Plaintiff's losses. The Ethos $1,005 overcharge directly caused economic loss in the amount paid with no additional value received. QBE's bad faith directly caused loss of insurance benefits and delay in repairs.

**259.** QBE's violations were willful. The pattern of conduct spanning 95 days of inaction, ignoring written demands, and systematic warranty suppression demonstrates willful violation. Pursuant to NMSA §59A-16-30(D), Plaintiff is entitled to punitive damages for willful violations of the Insurance Code.

**260.** Plaintiff is entitled to actual damages, consequential damages, punitive damages, attorney fees, and costs pursuant to NMSA §59A-16-30.

---

---

## COUNT 21: ALLY FINANCIAL — FTC HOLDER RULE AND INDEPENDENT UPA LIABILITY

**261.** Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

**262.** Defendant Ally Financial Inc. is the confirmed assignee of the Retail Installment Sales Contract executed November 1, 2024, identified as Ally Agreement #228418001800. Ally confirmed its role as holder in its May 13, 2026 CFPB response, which stated that Ally "contacted Richardson Investments, Inc." regarding Plaintiff's account, establishing Ally's actual knowledge of the true operating entity and the dual-contract scheme.

**263.** The Retail Installment Sales Contract contains the FTC Holder notice required by 16 CFR § 433.2: "ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF."

**264.** Pursuant to 16 CFR § 433.2, Ally, as holder, is subject to all claims and defenses Plaintiff has against Richardson Investments Inc. d/b/a Rich Ford Sales, including all claims in Counts 1, 2, 3, 4, 5, 6, 8, 9, 11, 12, 13, 15, 17, and 19.

**265.** Ally denied Holder Rule liability in its May 13, 2026 CFPB response. Under New Mexico law, an assignee's denial of Holder Rule liability combined with continued collection after a consumer dispute constitutes an independent violation of the New Mexico Unfair Practices Act. *Jaramillo v. Gonzales*, 2002-NMCA-072, 132 N.M. 459, 50 P.3d 554 (assignee's denial of Holder Rule liability and continued billing after consumer dispute violates NM UPA). Each monthly payment Ally collected after Plaintiff's February 13, 2026 written dispute constitutes a separate independent UPA violation.

**266.** The FTC's January 18, 2022 Advisory Opinion expressly confirmed that the Holder Rule's amounts-paid cap does not limit attorney fee awards under state fee-shifting statutes, including NMSA § 57-12-10(B). Ally cannot cap its attorney fee exposure at amounts Plaintiff paid.

**267.** Ally's continued collection of monthly payments after receiving written notice of the dual contract fraud constitutes unconscionable conduct under NMSA § 57-12-2(E). Ally knew or should have known that the $3,821.32 discrepancy between the customer copy ($45,244.60) and the Ally copy ($41,423.28) constituted an overcharge, yet continued collecting payments based on the inflated amount through the date of this filing.

**268.** As a direct and proximate result of Ally's Holder Rule liability and independent UPA violations, Plaintiff is entitled to actual damages equal to all amounts paid for a defective vehicle that was never repaired, treble damages under NMSA § 57-12-10(B), attorney fees under NMSA § 57-12-10(B), restitution of the $3,821.32 overcharge, and all other relief available under the Holder Rule and the Unfair Practices Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Darwin Llewellyn Pitts respectfully requests that this Court enter judgment in his favor and against Defendants as follows:

**Counts 1 and 2 (Breach of Contract and Breach of Express Warranty):**

**269.** Actual damages for breach of contract and breach of express warranty.

**270.** Consequential damages including collision damage, loss of use, and diminished value.

**271.** Incidental damages including repair costs, towing, and rental vehicle expenses.

**272.** Pre-judgment interest from November 1, 2024.

**273.** Post-judgment interest at the statutory rate.

**274.** Attorney fees and costs.

**Count 3 (New Mexico Unfair Practices Act - Base Theory):**

**275.** Treble damages pursuant to NMSA §57-12-10(B), which mandates treble damages for UPA violations.

**276.** Attorney fees pursuant to NMSA §57-12-10(B), which mandates attorney fees for prevailing UPA plaintiffs.

**277.** Actual damages for ascertainable loss, including the $4,826.32 overcharge and additional economic loss.

**Count 4 (New Mexico Motor Vehicle Dealers Act):**

**278.** Actual damages pursuant to NMSA §57-16-10.

**279.** Attorney fees pursuant to NMSA §57-16-10.

**280.** Costs of suit.

**Count 5 (Breach of Implied Warranty of Fitness for Particular Purpose):**

**281.** Damages pursuant to NMSA §55-2-714, including difference in value, incidental damages, and consequential damages.

**Count 6 (Negligent Misrepresentation):**

**282.** Actual damages for economic loss resulting from reliance on negligent misrepresentations.

**Count 7 (Alter Ego and Piercing Corporate Veil — including Single Enterprise theory):**

**283.** Declaration that the corporate separateness of Richardson Ford Sales Inc., Richardson Investments Inc., and Bob Turner's Ford Country Inc. is a legal fiction and should be disregarded.

**284.** Joint and several liability for all defendants, including Richardson Ford Sales Inc., Richardson Investments Inc., Darin Wade individually, Terry Richardson individually, and Bob Turner's Ford Country Inc.

**285.** Individual liability for directors Darin Wade and Terry Richardson for breach of fiduciary duty to creditors under NMSA §53-16-5 and §53-11-35 (director duties extend to creditors during winding-up under the duty of care).

**Count 8 (New Mexico Lemon Law):**

**286.** Replacement vehicle or refund of the purchase price pursuant to NMSA §57-16A-4.

**287.** Civil penalty pursuant to NMSA §57-16A-4.

**288.** Attorney fees pursuant to NMSA §57-16A-4.

**Count 9 (Magnuson-Moss Warranty Act):**

**289.** Damages pursuant to 15 USC §2310(d).

**290.** Attorney fees pursuant to 15 USC §2310(d).

**Count 13 (New Mexico Unfair Practices Act - Entity Concealment):**

**291.** Treble damages pursuant to NMSA §57-12-10(B).

**292.** Attorney fees pursuant to NMSA §57-12-10(B).

**Count 11 (Common-Law Fraud):**

**293.** Actual damages for fraud.

**294.** Punitive damages in an amount to be determined at trial.

**Count 12 (Breach of Implied Warranty of Merchantability):**

**295.** Damages pursuant to NMSA §55-2-714 and NMSA §55-2-715.

**Count 15 (Truth in Lending Act):**

**296.** Actual damages pursuant to 15 USC §1640(a)(1).

**297.** Statutory damages of twice the finance charge ($7,642.64) pursuant to 15 USC §1640(a)(2)(A).

**298.** Attorney fees pursuant to 15 USC §1640(a)(3).

**299.** Costs of suit pursuant to 15 USC §1640(a)(3).

**Count 16 (Unjust Enrichment):**

**300.** Restitution of the $4,826.32 overcharge.

**301.** Additional restitution as the Court determines equitable.

**302.** Pre-judgment interest from November 1, 2024.

**Count 18 (Bailment and Negligence):**

**303.** Damages for loss of use while vehicle in Power Ford custody.

**304.** Damages for diminished value.

**305.** Damages for emotional distress.

**306.** Individual liability for Robert Sneed if the evidence shows he personally participated in the breach.

**Count 19 (Dual Contract Voidness):**

**307.** Declaration that no valid contract was formed due to lack of mutual assent.

**308.** Declaration that any contract purportedly formed is void ab initio.

**309.** Rescission of any obligations under the void contract.

**310.** Restitution of all payments made under the void contract.

**Count 20 (New Mexico Insurance Code):**

**311.** Actual damages pursuant to NMSA §59A-16-30.

**312.** Consequential damages pursuant to NMSA §59A-16-30.

**313.** Punitive damages for willful violations pursuant to NMSA §59A-16-30(D), in an amount to be determined at trial.

**314.** Attorney fees.

**315.** Costs of suit.

**Punitive Damages (All Applicable Counts):**

**316.** Plaintiff is entitled to punitive damages on all counts where willful, malicious, or fraudulent conduct is established. New Mexico courts have upheld punitive-to-compensatory ratios of 28.7:1 in consumer fraud cases involving intentional, repeated misconduct against financially vulnerable plaintiffs. *Albert Smith v. Reliable Chevrolet (NM), LLC*, No. A-1-CA-42066 (N.M. Ct. App. March 30, 2026) (affirming $2,500,000 punitive damages award on $87,000 compensatory damages for UPA violations, fraud, and conversion by automobile dealer; 28.7:1 ratio upheld as constitutional where conduct was intentional, repeated, and part of a larger pattern of fraud affecting multiple consumers). The conduct documented in this complaint — dual contract fraud affecting the core terms of the transaction, deliberate suppression of warranty claims, 40 years of continuous entity concealment — satisfies each reprehensibility factor identified in *Albert Smith*.

**Count 21 (Ally Financial — FTC Holder Rule and Independent UPA):**

Actual damages equal to all amounts paid under the contract for a defective vehicle that was never repaired, treble damages under NMSA § 57-12-10(B) for Ally's independent UPA violations, attorney fees under NMSA § 57-12-10(B), restitution of the $3,821.32 overcharge, costs of suit, and all other relief available under the FTC Holder Rule and the New Mexico Unfair Practices Act.

**General Relief:**

**317.** Trial by jury on all issues so triable.

**318.** Such other and further relief as the Court deems just and proper.

Respectfully submitted,

**Darwin Llewellyn Pitts**
Plaintiff Pro Se
323 Texas St SE, Albuquerque, NM 87108
(305) 763-7438
darwinpitts2001@yahoo.com

Date: June 8, 2026

## CERTIFICATE OF SERVICE

I, Darwin Llewellyn Pitts, certify that on the date set forth below, a true and correct copy of the foregoing Second Amended Complaint was served upon each defendant through process service by Martin Investigations, licensed New Mexico process server, with proof of service filed separately as to each defendant.

FILED IN MY OFFICE
2ND JUDICIAL DISTRICT COURT
BERNALILLO COUNTY, NM
CLERK OF THE COURT
6/8/2026 8:11 AM
NATHAN L. LUJAN

# AFFIDAVIT OF SERVICE

**State of New Mexico** **County of Bernalillo** **2nd Judicial District Court Court**

Case Number: CV 2026 04 272

Plaintiff:
**DARWIN LLEWELLYN PITTS**

vs.

Defendant:
**FORD MOTOR COMPANY RICHARDSON FORD SALES, INC, d/b/a RICH FORD SALES** et al

For:
Darwin Pitts
323 Texas Street
Albuquerque, NM

Received these papers on the 15th day of May, 2026 at 3:39 pm to be served on **John Michael Ordarica, 8601 Lomas Blvd. Ne, Albuquerque, NM 87112**.

I, Roberto Robles, being duly sworn, depose and say that on the **18th day of May, 2026 at 12:06 pm, I:**

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **Amended Summons and 1st Amended Complaint** to: **John Michael Ordarica** at the address of: **8601 Lomas Blvd. Ne, Albuquerque, NM 87112**, and informed said person of the contents therein, in compliance with state statutes.

**Additional Information pertaining to this Service:**
5/18/2026 12:06 pm Roberto Robles personally served John Michael Ordarica at 8601 Lomas Blvd. Ne, Albuquerque, NM 87112.

**Description** of Person Served: Age: ~50, Sex: M, Race/Skin Color: Caucasian, Height: 5'10", Weight: 190, Hair: Blonde, Glasses: N

I certify that I am over the age of 18 and have no interest in the above action.

Robles 8N

**Roberto Robles**
Process Server

Our Job Serial Number: MPP-2026003751

Subscribed and Sworn to before me on the 21st day of May, 2026 by the affiant who is personally known to me.

Barbara Anne Madrid
NOTARY PUBLIC

State of New Mexico
Notary Public
Barbara Anne Madrid
#1100415
Expires May 23, 2026

Copyright © 1992-2026 DreamBuilt Software, LLC - Process Server's Toolbox V9.0e

EXHIBIT A

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
6/10/2026 10:57 PM
KATINA WATSON
CLERK OF THE COURT
Cristina N. Garcia

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

DARWIN LLEWELLYN PITTS,

Plaintiff,

vs. No. D-202-CV-2026-04272

FORD MOTOR COMPANY, and
RICHARDSON FORD SALES, INC. d/b/a
RICH FORD,

Defendants.

**FORD'S ANSWER TO**
**PLAINTIFF'S COMPLAINT FOR DAMAGES,**
**STATUTORY VIOLATIONS, AND DEMAND FOR JURY TRIAL**

Defendant Ford Motor Company ("Ford") submits its Answer to Plaintiff's Complaint filed 4/29/2026 ("the Complaint"), and answers as follows:

**GENERAL ALLEGATIONS**

1. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 1 of the Complaint.

2. Ford admits it is a Delaware corporation and its principal place of business is in Dearborn, MI, and its registered agent for service of process in NM is The Corporation Company in Hobbs, NM. Ford admits that it is the manufacturer of the subject vehicle identified by VIN 3FTTW8H34RRB73199, a 2024 Ford Maverick Hybrid XLT, in the form as it left Ford's factory. Ford is without sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 2 of the Complaint.

EXHIBIT A

3. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 3 of the Complaint.

**JURISDICTION AND VENUE**

4. Ford is without sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 4 of the Complaint and thus denies the same at this time.

5. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 5 of the Complaint and thus denies the same at this time (including any and all other allegations as to personal jurisdiction at this time).

6. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 6 of the Complaint.

7. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 7 of the Complaint and thus denies the same at this time.

**FACTUAL ALLEGATIONS**

8. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 8 of the Complaint at this time.

9. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 9 of the Complaint at this time.

10. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint.

11. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint. Ford denies that the subject vehicle is/was

defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

12. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint. Ford denies that the subject vehicle is/was defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

13. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 13 of the Complaint. Ford denies that the subject vehicle is/was defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

14. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 14 of the Complaint. Ford denies that the subject vehicle is/was defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

15. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint. Ford denies that the subject vehicle is/was defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

16. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 16 of the Complaint. Ford denies that the subject vehicle is/was defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

17. Ford admits the existence of NHTSA Recall No. 25V787. Ford is without sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 17 of the Complaint. Ford denies that the subject vehicle is/was defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

18. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 18 of the Complaint. Ford denies that the subject vehicle is/was defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

19. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 19 of the Complaint. Ford denies that the subject vehicle is/was defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

20. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 20 of the Complaint.

21. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 21 of the Complaint. Ford denies that the subject vehicle is/was defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

22. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 22 of the Complaint. Ford denies that the subject vehicle is/was

defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

23. Ford admits there is a 9/25/2025 incident involving Plaintiff reflected in the identified police report. Ford is without sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 23 of the Complaint.

24. Ford admits receiving a document that on its face appears to be a sworn written statement by Plaintiff on March 10, 2026, regarding the alleged 9/25/2025 incident. Ford is without sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 24 of the Complaint. Ford denies that the subject vehicle is/was defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

25. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 25 of the Complaint. Ford denies that the subject vehicle is/was defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

26. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 26 of the Complaint. Ford denies that the subject vehicle is/was defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

27. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 27 of the Complaint.

28. Ford admits Plaintiff appears to have sent an email dated March 11, 2026, with attachments of the identified police report and the identified sworn statement. Ford is without sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 28 of the Complaint. Ford denies that the subject vehicle is/was defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

29. Ford admits that an email was sent by paralegal Eileen Pawelek on April 2, 2026, communicating that Ford declined at that time to offer assistance after reviewing the claim. Ford is without sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 29 of the Complaint.

30. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 30 of the Complaint.

31. Ford denies any allegation of failing or refusing to act in good faith. Ford is without sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 31 of the Complaint. Ford denies that the subject vehicle is/was defective or caused any injuries, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

32. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 32 of the Complaint.

33. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 33 of the Complaint.

**COUNT I**

34. Ford incorporates by reference all previous paragraphs of its Answer.

35. Ford states the NM UPA speaks for itself, and otherwise is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 35 of the Complaint

36. As to Ford, denied. Ford is without sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 36 of the Complaint.

37. As to Ford, denied. Ford is without sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 37 of the Complaint..

38. As to Ford, denied. Ford is without sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 38 of the Complaint.

39. As to Ford, denied. Ford is without sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 39 of the Complaint.

40. As to Ford, denied. Ford is without sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 40 of the Complaint.

**COUNT TWO**

41. Ford incorporates by reference all previous paragraphs of its Answer.

42. As to Ford, denied. Ford is without sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 42 of the Complaint. Ford denies that the subject vehicle is/was defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

43. As to Ford, denied. Ford is without sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 43 of the Complaint. Ford denies that

the subject vehicle is/was defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

44. As to Ford, denied. Ford is without sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 44 of the Complaint.

45. As to Ford, denied. Ford is without sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 45 of the Complaint.

46. As to Ford, denied. Ford is without sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 46 of the Complaint.

47. As to Ford, denied. Ford is without sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 47 of the Complaint.

48. As to Ford, denied. Ford is without sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 48 of the Complaint.

**COUNT 3**

49. Ford incorporates by reference all previous paragraphs of its Answer.

50. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 50 of the Complaint. Ford denies that the subject vehicle is/was defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

51. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 51 of the Complaint. Ford denies that the subject vehicle is/was defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

52. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 52 of the Complaint. Ford denies that the subject vehicle is/was defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

**COUNT 4**

53. Ford incorporates by reference all previous paragraphs of its Answer.

54. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 54 of the Complaint. Ford denies that the subject vehicle is/was defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

55. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 55 of the Complaint. Ford denies that the subject vehicle is/was defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

56. As to Ford, denied. Ford is without sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 56 of the Complaint. Ford denies that the subject vehicle is/was defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

57. Ford is without sufficient knowledge to form a belief as to the truth of the allegations in Paragraph 57 of the Complaint. Ford denies that the subject vehicle is/was defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

58. As to Ford, denied. Ford is without sufficient knowledge to form a belief as to the truth of the remaining allegations in Paragraph 58 of the Complaint. Ford denies that the subject vehicle is/was defective or caused any damages, or that Ford was negligent in any way or otherwise liable for any damages in any manner.

**PRAYER FOR RELIEF**

Further, Ford denies that Plaintiff is entitled to recover from Ford any of the relief claimed in the "WHEREFORE" paragraph (and its subsections) following Paragraph 58 of the Complaint, and Ford denies that there is any proper grounds or evidence showing conduct by Ford entitling Plaintiff to any relief in any form whatsoever from Ford.

**GENERAL DENIAL**

All allegations of the Complaint not expressly admitted are denied. In particular, at this time, Ford denies that venue is proper or that personal jurisdiction (general or specific) exists over Ford. *See e.g., Daimler AG v. Bauman*, 134 S.Ct. 746 (2014); *Walden v. Fiore*, 134 S.Ct. 1115 (2014). Moreover, Plaintiff's claims do not arise out of or relate to Ford contacts with the forum – the connection between Ford, the forum and the underlying controversy are not close enough for the proper exercise of specific jurisdiction. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021).

Ford answers the Complaint above without waiving any available defenses.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

The Complaint fails to state claims against Ford upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

The sole, proximate cause of the alleged injuries and damages complained of in the Complaint was the act or acts of a third party or parties for which Ford is in no way liable or responsible, including but not limited to the driver(s) of any other vehicles involved in or contributing to the subject accident.

**THIRD AFFIRMATIVE DEFENSE**

The contributing negligence and/or fault of third parties, including the driver of the subject vehicle and including the driver(s) of any other vehicles involved in or contributing to the subject accident, which negligence may have been the proximate, contributing cause of the alleged injuries and damages, should be apportioned, and any damages awarded against Ford should be reduced by the percentages of fault found against third parties, including the driver of the subject vehicle, and any award against Ford should be limited only to its own percentage of fault, which fault is denied.

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiff was negligent and said negligence proximately caused or contributed to cause the injuries and damages complained of in the Complaint, thereby reducing the amount of Plaintiff's damages by an amount proportionate to the degree of fault of Plaintiff.

**FIFTH AFFIRMATIVE DEFENSE**

The proximate cause of the alleged injuries and damages was the misuse of the vehicle referred to in the Complaint.

**SIXTH AFFIRMATIVE DEFENSE**

Any injuries or expenses sustained or incurred by Plaintiff was proximately caused in whole or in part by the conduct of, superseding or independent, intervening actions of, or misuse, abuse, or alteration of a product by one or more persons or entities other than Ford, for whose conduct Ford is not responsible, including the driver(s) of any other vehicles involved in or contributing to the subject accident.

**SEVENTH AFFIRMATIVE DEFENSE**

Any product manufactured and/or placed into the stream of commerce by Ford was suited for the purposes for which it was manufactured and/or placed into the stream of commerce, and Ford denies the existence of any defect or unreasonably dangerous condition of any product manufactured by it as alleged by Plaintiff.

**EIGHTH AFFIRMATIVE DEFENSE**

If any defective condition existed in any product manufactured and/or placed into the stream of commerce by Ford as alleged by Plaintiff, which is expressly denied, such defective condition was caused by persons or parties other than Ford.

**NINTH AFFIRMATIVE DEFENSE**

Any product manufactured and/or placed into the stream of commerce by Ford that allegedly caused the damages as claimed by Plaintiff, was in the custody and control of other parties at all times material hereto, and that the intervening cause and the sole proximate cause of the alleged injuries and damages giving rise to the Complaint was the failure of said parties, their employees, and/or agents to inspect, maintain, and use the product properly.

**TENTH AFFIRMATIVE DEFENSE**

The liability of Ford, if any, all of which is expressly denied, is limited by the limitations contained in the terms and conditions as stated and set forth in any documents arising out of and in connection with the sale or service of the vehicle referred to in the Complaint or any warranty or owner's manual, or any other applicable document containing limiting terms or conditions.

**ELEVENTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred because the methods, standards, and techniques utilized in formulating and manufacturing the product in question and in issuing warnings and instructions with respect to its use were in conformity with the generally recognized, reasonably available, and reliable state of knowledge in the field at the time the product was manufactured or supplied by Ford.

**TWELFTH AFFIRMATIVE DEFENSE**

Unless Ford's liability for punitive damages and the appropriate amount of punitive damages are required to be established by proof of every element beyond a reasonable doubt, any award of punitive damages would violate Ford's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by the New Mexico Constitution, and would be improper under the common law and public policies of the State of New Mexico and the United States.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Plaintiff's claim for punitive damages against Ford cannot be maintained, because an award of punitive damages under current federal and New Mexico law would be void for vagueness, both facially and as applied. Among other deficiencies, there is an absence of

adequate notice of what conduct is subject to punishment; an absence of adequate notice of what punishment may be imposed; an absence of a predetermined limit, such as a maximum multiple of compensatory damages or a maximum amount, on the amount of punitive damages that a jury may impose, a risk that punitive damages will be imposed retrospectively based on conduct that was not deemed punishable at the time the conduct occurred, and it would permit and encourage arbitrary and discriminatory enforcement, all in violation of the due process clause of the Fourteenth Amendment to the United States Constitution, the New Mexico Constitution, and the common law and public policies of the State of New Mexico and the United States.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claim for punitive damages against Ford cannot be maintained, because any award of punitive damages under federal or New Mexico law would be by a jury that (1) is not provided standards of sufficient clarity for determining the appropriateness, and the appropriate size, of a punitive damages award, (2) is not adequately instructed on the limits on punitive damages imposed by the applicable principles of deterrence and punishment, (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, on the basis of invidiously discriminatory characteristics, including the residence, wealth, and corporate status of Ford, (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with clarity the conduct or mental state that makes damages permissible, and (5) is not subject to adequate trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of objective standards. Any such verdict would violate Ford's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and the New

Mexico Constitution, and would be improper under the common law and public policies of New Mexico.

**FIFTEENTH AFFIRMATIVE DEFENSE**

Any award of punitive damages based on anything other than Ford's conduct in connection with the design, manufacture, and sale of the specific single vehicle that is the subject of this lawsuit would violate the due process clause of the Fourteenth Amendment to the United States Constitution and the New Mexico Constitution, and would be improper under the common law and public policies of the State of New Mexico and United States, because any other judgment for punitive damages in this case cannot protect Ford against impermissible multiple punishment for the same wrong and against punishment for extra territorial conduct, including especially conduct that is lawful in states other than the State of New Mexico. In addition, any such award would violate principles of comity under the laws of the State of New Mexico and United States.

**SIXTEENTH AFFIRMATIVE DEFENSE**

To the extent that the law of New Mexico or United States permits punishment to be measured by the net worth or financial status of Ford and imposes greater punishment on defendants with larger net worth, such an award would be unconstitutional because it permits arbitrary, capricious and fundamentally unfair punishments, allows bias and prejudice to infect verdicts imposing punishment, allows punishment to be imposed based on lawful profits and conduct of Ford in other States, and allows dissimilar treatment of similarly situated defendants, in violation of the due process and equal protection provisions of the Fourteenth Amendment to

the United States Constitution, the Commerce Clause of the United States Constitution, and the New Mexico Constitution.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

The law of Michigan applies to punitive damages. Pursuant to that law, no punitive damages can be awarded.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

Ford does not knowingly nor intentionally waive any applicable affirmative defenses. Ford reserves the right to assert additional defenses that it may discover in the course of the proceedings of this matter and to which it may be entitled under the law, including case law, statutes and rules, of the jurisdictions whose law may be found to apply to the claims asserted.

**NINETEENTH AFFIRMATIVE DEFENSE**

Plaintiff's injuries and damages were the result of the motor vehicle accident caused by the driver of the subject vehicle or another party or third-party and were not enhanced injuries caused by any condition of the subject vehicle.

**TWENTIETH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred to the extent that they are expressly or impliedly preempted by federal statutes or regulations.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred to the extent the subject vehicle was substantially changed by other parties or entities after it left Ford's control.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

Unless Ford's liability for punitive damages and the appropriate amount of punitive damages are required to be established by clear and convincing evidence, any award of punitive damages would violate Ford's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by the due process provisions of the New Mexico Constitution.

**TWENTY-THIRD AFFIRMATIVE DEFENSE**

Plaintiff has failed to join indispensable parties as set forth in Rule 1-019 of the New Mexico Rules of Civil Procedure for the District Courts.

**TWENTY-FOURTH AFFIRMATIVE DEFENSE**

Plaintiff's claims may be barred by an applicable Statute of Limitations or Statute of Repose.

**TWENTY-FIFTH AFFIRMATIVE DEFENSE**

Plaintiff failed to mitigate its damages.

**TWENTY-SIXTH AFFIRMATIVE DEFENSE**

Plaintiff lacks standing to bring one or more of the asserted claims.

**WHEREFORE**, Defendant Ford Motor Company requests that the Complaint against Defendant Ford Motor Company be dismissed with prejudice and/or that Defendant Ford Motor Company be awarded judgment in its favor with attorney's fees and costs and any other relief for Ford deemed warranted and just.

Respectfully Submitted,

By______________________
Todd Rinner
SNELL & WILMER LLP
201 Third St. NW #500
Albuquerque, New Mexico 87102
trinner@swlaw.com
*Attorney for Defendant Ford Motor Company*

I hereby certify that the foregoing was submitted for e-filing and e-service on all counsel of record via the Court's EFS on June 10, 2026, which caused all counsel of record to be served by electronic means to their respective email addresses of record, as more fully reflected on the Notification of Service generated by the Court's EFS.

______________________
Todd E. Rinner



EXHIBIT A

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
6/12/2026 10:44 AM
KATINA WATSON
CLERK OF THE COURT
Roberto A Rodriguez

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT**

**Darwin Llewellyn Pitts** **No. D-202-CV-2026-04272**

**Plaintiff**

**v.**

**Ford Motor Company, Richardson Investments Inc d/b/a Rich Ford, Darin Wade, individually, John Michael Ordorica, individually, and Terry Richardson, individually.**

**Defendants**

## ENTRY OF APPEARANCE

COME NOW attorney Benjamin E. Decker (Decker Griffel, LLC) and enter their appearance on behalf of Richardson Investments d/b/a Rich Ford, Darin Wade, and John Michael Ordorica in the above-referenced case.

Respectfully submitted,

**DECKER GRIFFEL, LLC**

By: */s/Benjamin Decker*

Benjamin Decker
Decker Griffel, LLC
P.O. Box 92740
Albuquerque, NM 87199
P (505) 369-6272 / F (505) 859-7713
ben@deckerlawoffice.com
*Attorneys for Richardson Investments d/b/a Rich Ford, Darin Wade, and John Michael Ordorica*



EXHIBIT A

**CERTIFICATE OF SERVICE**

I certify that on June 15, 2026, I caused a true and correct copy of this document to be served on the following persons or entities via e-mail and U.S. Mail:

Darwin Llewellyn Pitts
323 Texas St. SE
Albuquerque, NM 87108
305-763-7438
darwinpitts2001@yahoo.com
*Pro Se*

**DECKER GRIFFEL, LLC**

By: */s/Benjamin Decker*
Benjamin Decker

FILED IN MY OFFICE
2ND JUDICIAL DISTRICT COURT
BERNALILLO COUNTY, NM
KATINA WATSON
6/16/2026 8:06 AM
NATHAN L. LUJAN

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT COURT

DARWIN LLEWELLYN PITTS,
*Plaintiff,*

v.

FORD MOTOR COMPANY, et al.,
*Defendants.*

No. D-202-CV-2026-04272
Judge Daniel E. Ramczyk

**PLAINTIFF'S MOTION FOR LEAVE TO FILE THIRD AMENDED COMPLAINT**

Plaintiff Darwin Llewellyn Pitts, appearing *pro se*, respectfully moves this Court under Rule 1-015(A) NMRA for leave to file the attached Third Amended Complaint, and states:

1.The operative pleading is Plaintiff's Second Amended Complaint, filed June 8, 2026.

2.On June 10, 2026, Defendant Ford Motor Company filed an Answer. On its face, that Answer responds to "Plaintiff's Complaint filed 4/29/2026" - the original Complaint - and not to the operative Second Amended Complaint. Its caption names two defendants, while the operative pleading names eleven.

3.No defendant has filed a responsive pleading directed to the operative Second Amended Complaint.



EXHIBIT A

4.The proposed Third Amended Complaint does not add new claims against new defendants. It refines the claims already pleaded: it corrects citations, conforms the statutory damages demands to controlling law (reducing, not increasing, the amounts demanded), removes one count while retaining its supporting facts, reorders and renumbers the counts to cure duplicate paragraph numbering in the prior pleading, and adds factual allegations concerning (a) events documented in the existing service record and (b) events occurring after the operative pleading was filed, including charges incurred June 4-5, 2026 and a recurrence of the defect on June 8, 2026.

5.Pursuant to Rule 1-007.1 NMRA, Plaintiff sought concurrence in this Motion from the appearing counsel of record - Todd E. Rinner (counsel for Ford Motor Company) and Benjamin Decker (counsel for Richardson Investments Inc., Darin Wade, and John Michael Ordorica) - by email dated June 16, 2026. As of the time of filing, no response had been received, and the Motion is presumed opposed. Concurrence of the unserved and non-appearing Defendants could not be obtained.

6.Rule 1-015(A) directs that leave to amend "shall be freely given when justice so requires." Leave is appropriate here: the case is at its earliest stage, no discovery has occurred, no scheduling order has issued, and no trial date is set. An amendment that narrows the pleading, corrects citations, and reduces a statutory damages demand cannot prejudice any defendant.

WHEREFORE, Plaintiff respectfully requests leave to file the attached Third Amended Complaint, and that the Court deem it filed as of the date leave is granted.



EXHIBIT A

Respectfully submitted,

Dated: June 16, 2026

Darwin Llewellyn Pitts, Pro Se

323 Texas St SE, Albuquerque, NM 87108

(305) 763-7438

darwinpitts2001@yahoo.com

**CERTIFICATE OF SERVICE**

I certify that on June 16, 2026, I filed the foregoing in person with the Clerk of the Second Judicial District Court and served a copy on the appearing counsel of record by email and U.S. first-class mail:

Todd E. Rinner, Snell & Wilmer LLP, 201 Third St. NW #500, Albuquerque, NM 87102, trinner@swlaw.com - counsel for Defendant Ford Motor Company.

Benjamin Decker, Decker Law Office, 4308 Carlisle Blvd NE, Suite 202, Albuquerque, NM 87107, ben@deckerlawoffice.com - counsel for Defendants Richardson Investments Inc., Darin Wade, and John Michael Ordorica.

Darwin Llewellyn Pitts



EXHIBIT A

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
6/12/2026 10:44 AM
KATINA WATSON
CLERK OF THE COURT
Brianna Rankin

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT**

**Darwin Llewellyn Pitts** **No. D-202-CV-2026-04272**

**Plaintiff**

**v.**

**Ford Motor Company, Richardson Investments Inc d/b/a Rich Ford, Darin Wade, individually, John Michael Ordorica, individually, and Terry Richardson, individually.**

**Defendants**

**NOTICE OF PREEMPTORY EXCUSAL**

COME NOW, Richardson Investments Inc. d/b/a Rich Ford through their attorneys, Decker Griffel, LLC, by Benjamin Decker and hereby preemptively excuses Hon. Victor S. Lopez pursuant to NMRA, 1-088.1.

Respectfully submitted,

**DECKER GRIFFEL, LLC**

By: */s/Benjamin Decker*
Benjamin Decker
Decker Griffel, LLC
P.O. Box 92740
Albuquerque, NM 87199
P (505) 369-6272 / F (505) 859-7713
ben@deckerlawoffice.com
*Attorneys for Richardson Investments Inc. d/b/a Rich Ford*



EXHIBIT A

**CERTIFICATE OF SERVICE**

I certify that on June 15, 2026, I caused a true and correct copy of this document to be served on the following persons or entities via e-mail and U.S. Mail:

Darwin Llewellyn Pitts
323 Texas St. SE
Albuquerque, NM 87108
305-763-7438
darwinpitts2001@yahoo.com
*Pro Se*

**DECKER GRIFFEL, LLC**

By: */s/Benjamin Decker*
Benjamin Decker



EXHIBIT A

FILED
2ND JUDICIAL DISTRICT COURT
Bernalillo County
6/12/2026 5:28 PM
KATINA WATSON
CLERK OF THE COURT
Brianna Rankin

**STATE OF NEW MEXICO**
**BERNALILLO COUNTY**
**SECOND JUDICIAL DISTRICT COURT**

**DARWIN LLEWELLYN PITTS**

**V.**

**FORD MOTOR COMPANY, ET AL.** **No. D-202-CV-2026-04272**

## NOTICE OF JUDGE REASSIGNMENT

The above referenced case has been reassigned to the Honorable Daniel E. Ramczyk, District Judge, Second Judicial District. This reassignment is effective 6/12/2026.

KATINA WATSON

SECOND JUDICIAL DISTRICT COURT
CLERK OF THE COURT

By:
Deputy Clerk

Brianna Rankin

Mailed to All Pro Se Parties On: 6/12/2026
Electronically Filed On: 6/12/2026
To All Parties Entitled to Notice

EXHIBIT A